Inderjit **BADHWAR**, et al., Plaintiffs,

v.

**UNITED STATES DEPARTMENT OF the AIR FORCE, et al., Defendants.**

Civ. A. No. 84–0154.

United States District Court,
District of Columbia.

Nov. 20, 1985.

Isaac N. Groner, Raymond D. Battocchi, Alfred F. Belcuore, Judith E. Olingy and Steven P. Korostoff, Cole & Groner, P.C., Washington, D.C., for plaintiffs.

Richard K. Willard, Acting Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., Barbara L. Gordon and Catherine J. Lanctot, Attys., U.S. Dept. of Justice, Civil Div., Washington, D.C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

### I.

Plaintiffs in this action are Interjit Badhwar and Donald F. Goldberg. Both are reporters working on the staff of nationally syndicated columnist Jack Anderson. As part of an investigation of the military's accident investigation program, plaintiffs sought disclosure of information in the hands of the Departments of the Air Force, Navy, and Army. In response, defendants released a substantial number of documents to plaintiffs, but claimed that other information was exempt from disclosure pursuant to Exemption 5 of the Freedom of Information Act [FOIA], 5 U.S.C. § 552(b)(5) (1982). This action ensued.

■ Exemption 5 to the FOIA provides:

This section does not apply to matters that are—

inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

5 U.S.C. § 552(b)(5). Specifically at issue in this case is the defendants' claim of an exemption based on the deliberative process privilege, a privilege unique to the government. It protects predecisional and deliberative material, e.g., "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866 (D.C. Cir.1980). The purposes of the privilege are:

to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.

617 F.2d at 866 (citation omitted).

On March 6, 1985, after extensive briefing and argument, the Court, 615 F.Supp. 698, issued a Memorandum and Order dealing with the parties' cross-motions for summary judgment. The Order directed the release of information that had already been disclosed in litigation, and that was already in the public record. It ordered exempt from disclosure witness statements contained in safety reports; findings, conclusions, and recommendations of the Army and Air Force safety boards; and "For Official Use Only" stamps appearing on releasable documents.

The Memorandum noted that the insufficiency of the government's affidavits be-

fore it precluded summary judgment. The accompanying Order directed defendants to file detailed justifications for (1) the application of Exemption 5 to the safety report withheld by the Navy; (2) the application of Exemption 5 to withheld autopsy and related reports; and (3) the application of Exemptions 4 and 5 to technical reports and engineering evaluations furnished to the safety boards by aircraft manufacturers, which are being held by the Air Force. The "detailed justifications" and plaintiffs' response thereto having been filed, this action is now before the Court on the parties' renewed cross-motions for summary judgment as to the claims left undecided in the March 9 Memorandum and Order. The documents at issue were filed under seal on April 19, 1985, and remain available for *in camera* inspection. *In camera* review has been conducted where the detailed justifications fail to meet defendants' burden. *Environmental Protection Agency v. Mink*, 410 U.S. 73, 93, 93 S.Ct. 827, 839, 35 L.Ed.2d 119 (1972).

II.

A.

(1)

▮ The "findings, conclusions and recommendations" contained in safety reports[1] are "deliberative, predecisional, and exempt from disclosure under Exemption 5." Memorandum (Mem.) at 9 (filed March 6, 1985) (citation omitted). At issue in this case is the Navy's failure to segregate and disclose the factual portions of its report. Factual information "reasonably segregable" from exempt information must be disclosed under the FOIA. 5 U.S.C. § 552(b);

*Mink, supra,* 410 U.S. at 91, 93 S.Ct. at 838.

▮ Factual information which is drawn from confidential witness statements remains exempt from disclosure. *Cooper v. Department of the Navy*, 558 F.2d 274, 278 (5th Cir.1977), *modified on rehearing*, 594 F.2d 484 (5th Cir.), *cert. denied*, 444 U.S. 926, 100 S.Ct. 266, 62 L.Ed.2d 183 (1979). This is true even though these same facts have already been publicly disclosed in the collateral report. *Id.* at 276. As part of its detailed justification, the Navy has proffered the second Affidavit of Commodore Breast (Breast Affidavit) (filed March 29, 1985).[2] The Breast Affidavit reveals that the sources of the facts in the safety report include "confidential witness statements, engineering investigations, photographs, manuals, logs, etc." Breast Affidavit at ¶ 10. Moreover, the Navy's explanation for not disclosing material facts not contained in the collateral report discloses that only one of these was derived from a confidential witness statement. Breast Affidavit at ¶ 14. It is thus certain that this is not a case like *Cooper, supra,* where the entire safety report must be exempt because:

> whatever information of a factual nature is contained in it was obtained upon the same promises as actual statements would have been.

558 F.2d at 278. Instead, this case is similar to *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984), where only a portion of the safety report is protected from disclosure as confidential.

Despite the Navy's concession that all the facts in the safety report are not derived from confidential witness statements, the Navy nevertheless argues that all facts

1. A safety report is prepared by the Safety Board of the military department. A safety report is to be distinguished from a collateral report which reviews the same information available to the Safety Board but is conducted by different personnel and produces a report "expurgated for public consumption." Mem. at 3.

2. Commodore Breast has executed three affidavits. The first was filed June 15, 1984, attached

to Defendants' Motion for Summary Judgment. The second was filed on March 29, 1985, in response to the Court's Order for a "detailed justification" of the application of the FOIA exemptions invoked by the Navy. The third was filed June 12, 1985, in response to the Court's Order of April 24, 1985, directing defendants to file affidavits tracking the safety reports at issue to any final decision they may produce.

in the report are protected from disclosure under Exemption 5. The Breast Affidavit reveals that all but two of the "statements of material fact" that appear in the safety report also appear in the collateral report. Breast Affidavit at ¶ 14. Accordingly, the Navy does not argue that the release of the facts themselves will pose any problem. Rather, it contends that the manner in which the facts are arranged will betray the focus of the Safety Board, whose deliberations are exempt from disclosure.

In this connection, the Navy argues that two sorts of facts appear in its safety reports: foundational facts and deliberative facts. Breast Affidavit at ¶¶ 9, 10. Foundational facts describe the events and circumstances of the accident, as revealed by witness statements, weather reports, and the like. The Navy reasons that such facts are inextricably intertwined with the analytical process of the Safety Board. Deliberative facts are used to support the Board's determination or to rule out competing theories. Breast Affidavit at ¶ 10. Since these facts are presumably arranged so as to advocate a theory about what caused the accident, argues the Navy, they are inevitably part and parcel of the advocacy—and hence the deliberative process. The Navy argues that when segregating factual information under the FOIA:

> More is required than merely plucking factual segments from the reports—there must be a sensitive reference to the relation of the factual segments to the report as a whole.

*Lead Industries Assoc. v. Occupational Safety and Health Administration*, 610 F.2d 70, 85 (2d Cir.1979).

The cases cited by the Navy in support of its position indicate that in certain limited circumstances the facts of a deliberative document may be so inextricably intertwined with the deliberations themselves that they cannot be segregated and disclosed. In *Lead Industries, supra*, the documents at issue were reports prepared at the request of the Occupational Safety and Health Administration by outside consultants to aid the agency in its rulemak-

ing. The reports were summaries of the massive public record, along with analyses and conclusions by the consultants. According to the Court, where the documents at issue are:

> submitted to the agency by its staff or outside consultants to assist it in rendering an informed decision upon the typically Gargantuan rule-making record ... disclosure of factual portions of the report may reveal the deliberative process of selection.

610 F.2d at 83 (citation omitted).

The Court in *Montrose Chemical Corp. of California v. Train*, 491 F.2d 63 (D.C. Cir.1974) confronted a similar situation. Defendant Environmental Protection Agency argued that a summary of information on the public record prepared by an EPA staff member should be protected from disclosure under Exemption 5. The Court faced the questions:

> Can Montrose use the FOIA to discover what factual information the Administrator's aides cited, discarded, compared, evaluated, and analyzed to assist the Administrator in formulating his decision? Or would such discovery be an improper probing of the mental processes behind a decision of an agency?

491 F.2d at 68. The Court decided that "[t]o probe the summaries of record evidence would be the same as probing the decision-making process itself." *Id.* In reaching this decision, the Court noted:

> [I]t must also be borne in mind that [the Administrator] did render a 50-page decision, citing voluminous facts and statistics, and explained in detail the rationale of his, the Administrator's, final decision. The world was not left in doubt as to either the factual basis or the reasoning behind the final product.

*Id.*

In *Russell v. Department of the Air Force*, 682 F.2d 1045 (D.C.Cir.1982), the Court refused to compel disclosure of a draft manuscript of an official Air Force history of the use of Agent Orange and other herbicides in the Vietnam War. Af-

ter an *in camera* inspection, the Court concluded that:

> a simple comparison between the pages sought and the official document would reveal what material supplied by subordinates senior officials judged appropriate for the history and what material they judged inappropriate. Exemption (b)(5) exists to prevent such disrobing of an agency decision-maker's judgment.

682 F.2d at 1049.

 But, the "exception" established by the cases cited by defendants is narrow. *Paisley v. Central Intelligence Agency,* 712 F.2d 686, 699 (D.C.Cir.1983), *vacated and remanded on other grounds,* 724 F.2d 201 (D.C.Cir.1984).[3] The general rule of the FOIA is that facts must be segregated and disclosed. *Mink, supra.* The exception:

> cannot be read so broadly as to undermine the basic rule; in most situations factual summaries prepared for informational purposes will not reveal deliberative processes and hence should be disclosed.

*Paisley, supra,* 712 F.2d at 699 (citations omitted).

In *Playboy Enterprises, Inc. v. Department of Justice,* 677 F.2d 931 (D.C.Cir. 1982) (Robb, J.),[4] the Department of Justice argued that a 302-page report submitted to the Attorney General by a task force on the investigation of a certain individual reflected "the 'choice, weighing and analysis of facts' by the task force, and [was] therefore protected as a part of the deliberative process." 677 F.2d at 935 (citing Brief for Appellant). The Court held that the report was not covered by Exemption 5, stating:

> Anyone making a report must of necessity select the facts to be mentioned in it; but a report does not become a part of the deliberative process merely because it contains only those facts which the

person making the report thinks material. If this were not so, every factual report would be protected as a part of the deliberative process.

*Id;* see also *ITT World Communications, supra* (factual portions of notes reporting substance of closed meetings held subject to disclosure).

According to the Court in *Playboy Enterprises,* the "deliberative process privilege is ... dependent upon the individual document and the role it plays in the administrative process." 677 F.2d at 935. Applying this rule to the instant situation, it is clear that in the cases relied upon by the Navy, the document held exempt was specifically prepared to aid the agency deliberative process. In each case, the document at issue had been one deliberative aid used by the agency in reaching a final, public decision. Release of the document would enable a comparison of the predecisional document with the final decision it helped produce. Thus, disclosure of the facts in the document would disclose the facts as they existed at one stage of the agency's deliberative process before the facts were arranged in their final, public form.

The safety report at issue in this case does not bear the same relationship to the facts on the public record, here the collateral report. The safety report is not created to aid in the formation of the collateral report. The collateral report is a separate and independent document. The facts in the safety and collateral reports are both culled from a body of non-public information. It is only through the two reports that the facts can become public. Since the two reports are prepared from the same body of information, an overlap in their factual content is to be expected. This does not mean, however, that a comparison of the two will expose the deliberative *pro-*

---

**3.** In fact, some courts have read this exception to apply only to "staff summaries of record evidence in adjudicatory and rulemaking proceedings." *Lacy v. United States Department of the Navy,* 593 F.Supp. 71, 77 n. 3 (D.Md.1984) (citing *ITT World Communications v. Federal*

*Communications Commission,* 699 F.2d 1219, 1238–39 (D.C.Cir.1983), *revd. on other grounds,* 466 U.S. 463, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984), and *Paisley, supra*).

**4.** Neither party cited this case.

*cess* of the agency by exposing how facts chosen and arranged to aid agency deliberations were later chosen and arranged to support the final, public decision.

As another distinction, in *Lead Industries, supra,* and *Montrose, supra,* the facts at issue were culled from an enormous public record. The facts had no informational value in and of themselves, and because the ratio of facts on the record to those chosen was high, an examination of the facts chosen could reveal the chooser's thinking process. Here, there is no massive public record for comparison. In fact, an *in camera* review demonstrates that the two reports are approximately the same length. The danger presented in the above cases of comparison of the evaluative document with a large body of available yet not chosen facts is not present in this case.

Were the Navy's argument accepted, then all facts contained in any deliberative document would be exempt from disclosure. *Playboy Enterprises, supra,* 677 F.2d at 935. But, the segregation requirement of the FOIA has teeth:

> The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing it contains some exempt material.

*Mead Data Central v. United States Department of the Air Force,* 566 F.2d 242, 260 (D.C.Cir.1977). To a certain extent, the facts in a document do reveal the items of information considered important by the agency. Moreover, facts often speak for themselves and to a knowledgeable person will reveal an obvious conclusion, in this case either a likely theory of causation or one to be rejected. But facts are facts, and the FOIA specifically imposes a segregation requirement. The cases cited by defendants represent a narrow exception which does not apply in this case. *Paisley, supra,* 712 F.2d at 699.

■ An *in camera* review of the safety report indicates that the facts contained within are reasonably segregable from the evaluative process. Facts drawn from witness statements remain protected. *Weber,*

*supra; Cooper, supra,* 558 F.2d at 278; *Machin v. Zuckert,* 316 F.2d 336 (D.C.Cir.), *cert. denied,* 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963). Thus, the Navy adequately describes why the material fact not contained in the collateral report which is mentioned in ¶ 13(i)(4) and ¶ 13(r)(7) of the Breast Affidavit is exempt. Breast Affidavit at ¶ 14. *In camera* review reveals, however, that the other fact would expose the deliberation process only to the extent that it speaks for itself. The information is purely factual, containing no indication of the conclusion drawn by the board. Thus, the information described in paragraph 13(j) of the Breast Affidavit as well as all other facts in the safety report not drawn from confidential witness statements must be disclosed.

The accompanying Order will direct the Navy to file on the public record, by a date certain, a copy of the safety report with redactions which represent only: Board deliberations, i.e., Board findings, conclusions and recommendations, Mem. at 9; and facts derived from confidential witness statements. The Navy should also file under seal an entire copy of the safety report with the redactions coded with different colored highlighters as to: (1) Board deliberations; and (2) facts derived from confidential witness statements. The Navy should also file under seal an accompanying affidavit which states for every fact claimed exempt because derived from a witness statement, the name of the witness who supplied the information.

(2)

■ Plaintiffs particularly object to the withholding of the Naval Safety Center's close out message (final endorsement) on the report. *See* Breast Affidavit at ¶ 13(f). Plaintiffs "have a serious question whether the Navy is withholding, as an alleged part of the deliberative process of the Accident Board, what is in reality a Navy final decision." Plaintiffs' Response To "Detailed Justifications Filed by Defendants" [Plaintiffs' Response] at 12 (filed April 16, 1985). A final decision of any agency, as well as any documents adopted by the agency to

explain its decision, are not protected from disclosure under Exemption 5. *Afshar v. Department of State*, 702 F.2d 1125, 1141–43 (D.C.Cir.1983). Plaintiffs peruse the Navy regulations to find what constitutes the "final decision" and conclude that it "appears to be that of the highest ranking endorser." Plaintiffs' Memorandum Following April 19, 1985 Status Conference [Plaintiffs' Mem.] at 3 (filed April 26, 1985).

■ Yet, even if the endorsement represents a "final disposition," it may not constitute a "final opinion." *American Federation of Government Employees v. Department of the Army*, 441 F.Supp. 1308, 1311 n. 16 (D.D.C.1977). A key element of a final decision is it that it adopt agency policy. *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 151–52, 95 S.Ct. 1504, 1516–17, 44 L.Ed.2d 29 (1975); *id.* at 1311. Moreover, the endorsement's status as predecisional does not fail merely because the Navy is unable to identify a final decision maker. According to the Court in *Sears, supra:*

> Our emphasis on the need to protect *pre-decisional* documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.

421 U.S. at 151 n. 18, 95 S.Ct. at 1517 n. 18 (emphasis in original).

■ In this case, the close out endorsement is described as follows:

> At the Naval Safety Center the "close out" endorsement is placed on the MIR [Mishap Investigating Report—safety report] as the report is referred back to the command which convened the AMB [Aviation Mishap Board]. The Naval Safety Center may, of course, include in this endorsement any recommendations for corrective action. The close out endorse-ment must account for the current status of all corrective action ordered by any operational commander, but does not, of itself, order any action. Once the Naval Safety Center places its close out endorsement on an [sic] MIR, that MIR is considered a completed investigation and is stored at the Naval Safety Center as a case study of one of thousands of "lessons learned" retrievable thereafter by safety personnel conducting safety studies.

Affidavit of Commodore J.C. Breast [Third Breast Affidavit] at ¶ 3 (filed June 12, 1985). Because an *in camera* review confirms that the close out endorsement "does not, of itself, order any action," it does not, itself, qualify as a final decision. This is true even though the Navy has not identified a final decision-maker. *American Federation, supra*, 441 F.Supp. at 1311 n. 16.

■ But, under the deliberative process privilege, the close out endorsement is only protected to the extent that it is predecisional or deliberative. Here, the Third Breast Affidavit represents that the close out endorsement provides a convenient factual summary of "all corrective action ordered by any operational commander." Third Breast Affidavit at ¶ 3. There is nothing *pre* decisional about a recitation of corrective action already taken. Moreover, the summary of corrective actions is a summary of facts, not "recommendations, ... proposals, [or] suggestions." *Coastal States Gas Corp., supra*, 617 F.2d at 866. There is no indication that Commodore Breast's recitation of corrective action is not segregable, and little reason why it should not be. These facts have not been disclosed before and thus do not raise the danger of comparison with the collateral report. Also, they, themselves, are final actions, so to the extent they adopt or reveal deliberations of the Safety Board, the disclosure is required by law. *Afshar, supra*, 702 F.2d at 1141–43; *Coastal States Gas Corp., supra*, 617 F.2d at 866.

Although the Breast Affidavit indicates that a recitation of "all corrective action

ordered" is mandatory in a close out endorsement, *in camera* review reveals that the particular final endorsement at issue does not contain such a summary. Consequently, there appears to be no information which should be released. However, because of the inconsistency between the Navy's statement and *in camera* review, and the Navy's lack of explanation therefor, the accompanying Order will require the Navy by a date certain to submit an explanation for the lack of such a mandatory accounting in the close out endorsement at issue.

(3)

Plaintiffs also complain that the Navy has belatedly and improperly raised Exemption 2 as a means of protecting from disclosure some of the material at issue. These materials are: the cover sheet of the safety report with the Aircraft Accident Identification Number; two internal memoranda relating to the report's classification as a sensitive document; and two comment sheets used for internal administrative communication. Breast Affidavit at ¶ 13(a), (b), (c), (d), (e). Exemption 2 protects "matters that are ... related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).

 As described, the material at issue appears to "relate[ ] to trivial administrative matters of no genuine public interest" in which case "exemption would be automatic under the statute." *Founding Church of Scientology v. Smith*, 721 F.2d 828, 830 n. 4 (D.C.Cir.1983). *In camera* review confirms that some of the information contained in these documents is ministerial and of no genuine public interest. The documents detailed in paragraphs 13(a) and 13(b) of the Breast Affidavit are fully described in the affidavit and as such are protected under Exemption 2. The documents described in paragraphs 13(c), (d), and (e), however, are exempt only as to the portions which relate to administrative handling instructions. *See id.* at 831 (agency filing and routing instructions may be protected from disclosure under Exemption 2). These documents contain significant sub-

stantive information. Although material of public interest may still be protected if "disclosure would risk circumvention of lawful agency regulation," *id.* at 830 n. 4, here, *in camera* review reveals that the substantive information at issue would not circumvent agency regulation by allowing those subject to regulation to evade it. *Department of the Air Force v. Rose*, 425 U.S. 352, 364, 96 S.Ct. 1592, 1600, 48 L.Ed.2d 11 (1976). The accompanying Order will require the Navy to file, by a date certain, a detailed justification for the application of some FOIA exemption other than Exemption 2, such as Exemption 5, to this information.

(4)

 Plaintiffs take issue with the Navy's attempt to shield from disclosure as deliberative eight photographs contained as enclosures to the Medical Officer's Report. The photographs are essentially factual and are easily segregable. Thus, the only question is whether they are exempt as deliberative. *Lacy, supra*, 593 F.Supp. at 76. Facts are exempt from disclosure only under certain narrow circumstances. *See* discussion at Part II(A)(1), *supra*. As part of the body of facts contained in the safety report, the same reasoning as in Part II(A)(1), *supra*, applies and the photographs are not exempt from disclosure. *See Lacy, supra*, 593 F.Supp. at 77–78.

The Navy points out, however, that these photographs contain "notations drawing attention to specific details in each photograph." Breast Affidavit at ¶ 13(r)(10). The photographs are factual and speak for themselves. The notations are in fact comments on certain features of the photographs which are obvious and available to a viewer. As such, the notations are similar to the staff summaries held exempt in *Lead Industries, supra*, and *Montrose, supra*. Their only function is to call to the Board's attention specific items of information which are in full view in the photograph itself. Their purpose is purely to aid Board deliberations. These notations, however, are segregable from the photographs.

The accompanying Order will direct the Navy to release the photographs with the notations redacted.

Also on the issue of photographs, plaintiffs allege that "the Breast declaration raises the question whether the Secret Accident Board has been destroying evidence it should have retained and made available to the collateral board." Plaintiffs' Response at 15. The passage of the Breast Affidavit provides:

> *Deliberative Facts* ... are those that shaped the Board's deliberations. ... For example, in the course of investigation, certain evidence may be developed in support of a possible theory, (i.e. 250 photographs). However, out of that evidence only a small portion (i.e. 5 photographs) might be relevant to the Board's ultimate mission in determining what caused the mishap. Although some evidence (facts) are seemingly discarded, it should be kept in mind that they were not ignored, as they were certainly considered during the deliberative stage. It is the *JAG MANUAL* [collateral] investigation that would contain a broader body of facts.

Breast Affidavit at ¶ 10. The Court is indeed mindful of its "experience with the government's mishandling of information in connection with the C5A Saigon accident," Plaintiffs' Response at 15. It is unclear, however whether the reference to 250 photographs culled to 5 relevant ones, read in context, is a confession of wrongdoing by the Board or merely an illustration of the difference between a foundational fact and a deliberative fact. If this statement is not hypothetical, and these "seemingly discarded" photographs were not made available to those who prepared the collateral report, then plaintiffs and the Court are entitled to an explanation as to the location or fate of these photographs. The accompanying Order will direct the Navy to file a detailed explanation stating: whether this reference in the Breast Affidavit at ¶ 10 to 250 photographs culled to 5 is actual or hypothetical; if actual, whether the 250 photographs mentioned, along with all other evidence considered by the Safety Board, were made available to the Collateral Board; and if not, where the photographs are, or how and why they were "seemingly discarded." Destruction or misplacement of documents, if that occurred, is not an acceptable way to exempt them from disclosure under the FOIA. *Cf. Friends For All Children, Inc. v. Lockheed Aircraft Corp.*, 587 F.Supp. 180, 204–08 (D.D.C.1984).

## B. Autopsy Reports

### (1) Army

The autopsy reports at issue are held by all three military departments who are defendants in this case. Plaintiffs make clear that they do not seek medical or personal information contained in the reports, and that upon a representation by defendants that only this type of information is being held they will withdraw their request. Mem. at 12. Accordingly, plaintiffs do not dispute the Army's contention that the subject autopsy reports contain only personal information, not directly relevant to the cause of the accident. Plaintiffs' Response at 15–16; Declaration of Susan J. Crawford (filed Nov. 28, 1984).

### (2) Air Force

As to the Air Force autopsy reports, the plaintiffs are generally satisfied with the detailed justification provided by Major General Gordon E. Williams. 28 U.S.C. § 1746 Declaration [Williams Declaration] (filed March 29, 1985). There are, however, several items to which the plaintiffs claim they are entitled. These are: (1) material available from nonprivileged sources, Williams Declaration at ¶ 4; (2) conclusory statements of individual board members, *id.* at ¶ 5; (3) information given to a pathologist and his advice to the Board, *id.* at ¶ 6; and (4) a report prepared by a civilian employee and a board member, *id.* at ¶ 18.

### ¶ 4

■ Paragraph 4 of the Williams Declaration provides:

> [A]lthough the information in this part is entered by the medical and/or life sup-

port member(s) of the Safety Investigation Board (SIB), it is provided to them either from other board members or from confidential witness statements. To the extent that the information is culled from confidential witness statements it is exempt. *Weber, supra,* 104 S.Ct. at 1491; *Cooper, supra,* 558 F.2d at 278; *Machin, supra,* 316 F.2d at 339. The other factual information, however, appears to be "purely factual material which is severable from the policy advice contained in [the] document." *Ryan v. Department of Justice,* 617 F.2d 781, 790 (D.C.Cir.1980). There is no representation that the factual material supplied by individual Board members would expose the deliberative process. Consequently, the Air Force must disclose the information detailed in paragraph 4 of the Williams Declaration which is not derived from confidential witness statements.

### ¶ 5

■ In paragraph five, plaintiffs ask for "conclusory statements" of Board members. Because "information therein constitutes SIB member opinions and findings" *id.* at ¶ 5, it is clearly deliberative and thus protected from disclosure under Exemption 5.

### ¶ 6

■ Paragraph six of the Williams Declaration seeks to protect from disclosure: "the performing pathologist's predecisional advice to the SIB" and "information provided to the pathologist by the SIB." Plaintiffs admit that "documents submitted to the government by outsiders may be covered by Exemption 5." Plaintiffs' Mem. at 7. According to the Court in *Ryan, supra:*

When an agency record is submitted by outside consultants as part of the deliberative process, and it was solicited by the agency, we find it entirely reasonable to deem the resulting document to be an "intra-agency" memorandum for purposes of determining the applicability of Exemption 5.

617 F.2d at 790. *In camera* review of the pathologist's "predecisional advice" shows that block 13 contains purely factual information. This is not deliberative and the accompanying Order will direct its disclosure. The information in block 14 represents the pathologist's evaluations of the evidence, and as such is protected from disclosure under Exemption 5.

■ The facts given by the Board to the pathologist, however, do not on their face implicate Board deliberation. The information is factual, and there is no indication that it is not segregable from the Board's conclusions and recommendations. *In camera* review confirms that the facts given to the pathologist by the Board do not compromise Board deliberations. The accompanying Order will direct release of the information in blocks 15 and 16 described in paragraph 6 of the Williams Declaration.

### ¶ 18

■ Paragraph eighteen of the Williams Declaration provides:

Pages Y–22 and Y–23 consist of a report entitled "ACES–II Egress System Analysis." Although on its face it purports to be a report prepared by one Edward L. Serocki, a DOD civilian employee, recent contacts by members of my staff with the life support member of the SIB confirm that it is a composite report by Mr. Serocki and the life support member of the SIB. It contains material prepared by the life support member, some of which was taken directly from the Life Support Officer's analysis at page Y–20. It is impossible now to separate the material because the inputs from the two individuals are inextricably intertwined.

The Air Force adequately represents that the document at issue was jointly prepared, contains deliberative material, and the non-deliberative portions cannot reasonably be segregated. This information is therefore exempt from disclosure.

### (3) Navy

■ The Navy offers a much less detailed justification for exemption of its autopsy report and related documents than

does the Air Force. Plaintiffs, however, contest only the description of the autopsy report, which provides:

> *Autopsy Report*: This is a one-page report containing purely personal, medical information and a conclusion as to the cause of death. None of this information is relevant in determining the cause of the mishap. This document is exempt under exemptions (b)(5) and (b)(6).

Breast Affidavit at ¶ 13(r)(9). To the extent that the Navy represents that the report contains "purely personal, medical information" plaintiffs have agreed to withdraw their request. The other item of information is "a conclusion as to cause of death." A conclusion by a Board member is protected as predecisional and deliberative. Consequently, the Navy autopsy report is exempt from disclosure.

### III.

#### A. Exemption 4

■ The Air Force seeks to exempt from disclosure technical reports and engineering evaluations (reports) which are furnished to safety boards by the aircraft manufacturer. The Air Force invokes Exemption 4, which protects from disclosure:

> matters that are—

> . . . . .

> trade secrets and commercial or financial information obtained from a person and privileged or confidential.

5 U.S.C. § 552(b)(4). The Court has found that the documents at issue meet the requirements of being commercial or financial and obtained from a person. Mem. at 13–14. What remains is "to determine whether the test for confidentiality under Exemption 4 has been satisfied." Mem. at 15. The components of a "detailed justification" of document confidentiality are set out in *Pacific Architects and Engineers, Inc. v. Renegotiation Board*, 505 F.2d 383 (D.C.Cir.1974). *See also Washington Post Co. v. United States Department of Health and Human Services*, 690 F.2d 252, 269 (D.C.Cir.1982). A detailed justification should include:

(a.) the extent to which data of the sort in dispute is customarily disclosed to the public, with specific factual or evidentiary material to support the conclusion reached; (b.) the extent to which disclosure of this information will impair the government's ability to obtain necessary information of this type in the future, with specific factual or evidentiary material to support the conclusion reached; (c.) the extent to which disclosure of the information will cause substantial harm to the competitive position of the person from whom the information is obtained, with specific factual or evidentiary material to support the conclusion reached; and (d.) the extent to which any harms of the type mentioned in (b.) and (c.) could be reduced or eliminated by non-disclosure of the identity of the person submitting the information in dispute.

505 F.2d at 385. The second and third prongs of the *Pacific Architects* test are disjunctive. *Washington Post, supra,* 690 F.2d at 268. Thus failure to meet one of these prongs is not fatal to an Exemption 4 claim.

The Air Force has supplied its detailed justification in the form of the Williams Declaration, *supra,* and the Affidavit of James L. Lane, Assistant General Counsel for the Fort Worth Division of General Dynamics Corporation (filed March 29, 1985).

#### (a) disclosure to the public

■ The Williams Declaration indicates that the information in the technical reports and engineering evaluations at issue is "not generally available from the contractor to the general public." Williams Declaration at ¶ 20. The government, however, does not support its conclusion with "specific factual or evidentiary material." The affidavit contains no indication of why the information is not generally available. The Air Force was on notice that this type of factual material would be required in its detailed justification. *See* Mem. at 15. Consequently, the government fails to meet this prong of the *Pacific Architects* test for a detailed justification.

#### (b) impairment of government ability to obtain information

The Lane Affidavit addresses the question of whether disclosure of the reports at issue would impair the government's ability to obtain necessary information:

> I can candidly state that if the privilege against disclosure of Air Force accident investigation reports be negated or invalidated, industry representatives participating in these investigations would of necessity be cautioned to be extremely careful in expressing comments, opinions, conclusions and recommendations concerning military mishaps in those instances where contractors render assistance. Such a development in my opinion, would have a significant negative impact upon the investigatory process and desired results of the investigation, i.e., the totally free exchange of comments, opinions, analyses, hypothoses, conjectures, computations, studies, conclusions and recommendations in the prevention of future mishaps.

Lane Affidavit at 3. General Williams supports this point by reference to a specific example, involving the Martin-Baker Company. This example is supported by a documentary attachment, containing a series of letters and messages. Williams Declaration at ¶ 22 & Attachment 2. The statement is detailed, as is the accompanying attachment. Accordingly, the Air Force demonstrates that disclosure of the types of reports at issue would impair the government's ability to continue to receive such information.

██ Beyond proving impairment to competitive position, the impairment proved under the second prong must not be "minor," but must be "significant enough to justify withholding the information." *Washington Post, supra,* 690 F.2d at 269. A factor to consider in determining whether disclosure will significantly impair the government's receipt of this information is whether preparation of the reports is mandatory. *Id.* at 268. Here, the contract between the Air Force and General Dynamics clearly contemplates that a contractor will produce mishap reports. Declaration of Alex J. Ranciglio at ¶ 10 (filed June 7, 1985). It does not, however, specifically require it; and there is no penalty provision in the contract governing the refusal of a contractor, to provide this information to the government. *Id.* The Ranciglio Declaration thus indicates that preparation of the reports by contractors is common practice, but not technically mandatory. Still, as plaintiffs point out, it is difficult to believe that contractors such as General Dynamics "would give up government contracts worth billions of dollars, with their well known attendant fringe benefits, rather than agree to provide technical reports and engineering evaluations to its customer." Plaintiffs' Response at 6. The reports thus appear effectively mandatory, and the impairment to the government's ability to obtain the information it needs, not significant. The Air Force's detailed justification is insufficient under this prong of the *Pacific Architects* test also.

#### (c) harm to competitive position

The declarations offered by the Air Force are insufficient to establish competitive harm. The Lane Affidavit alleges competitive harm only in a conclusory and speculative manner:

> [The reports], when misunderstood, misquoted or misused, could conceivably have a negative effect on the contractor, the contractor's personnel, as well as the contractor's competitive position in U.S. Government procurements.

Lane Affidavit at 2. Moreover, the Williams Declaration and attachments indicate that fear of litigation, not loss of competitive position, motivates contractors' desire for confidentiality. For example, the Martin-Baker Company represented that its decision to amend its accident investigation reporting policy was "entirely due to the litigation problem." Williams Declaration at Attachment 2. This prong of the Air Force's detailed justification is thus insufficient.

(d) elimination of harms by nondisclosure

The Air Force affiants make no representations as to the extent to which the harms in the second or third prongs could be reduced or eliminated by nondisclosure of the contractor's identity. Perhaps defendants rely on the fact that the technical and engineering evaluations at issue in this case are necessarily produced by the aircraft manufacturer, whose identity is obvious in military aviation accidents. Nevertheless, *Pacific Architects* requires that "[i]f it is claimed that the information itself discloses to knowledgeable people the identity of the person who supplied it, some factual basis for that conclusion must be advanced to support the Board's nondisclosure." 505 F.2d at 385. The Air Force has made no such claim, nor advanced a factual basis for this conclusion. Consequently, the Air Force's detailed justification is deficient as to the fourth prong of the *Pacific Architects* test.

* * * * * *

The Air Force has thus failed to submit an adequate detailed justification for its invocation of Exemption 4. Most importantly, it has failed to prove either of the harms to the government which Exemption 4 is designed to address. *Washington Post, supra,* 690 F.2d at 268. Consequently, the Air Force's Exemption 4 claim must fail.

### B. Exemption 5

The Air Force asserts that the technical reports and engineering evaluations are protected under Exemption 5 for two reasons. First, they are witness statements within the meaning of *Machin, supra,* 316 F.2d at 339, and *Weber, supra,* 104 S.Ct. at 1491. Second, they are subject to the deliberative process privilege because their disclosure would compromise the deliberations of the Board.

■ Defendants' first argument, that manufacturers bear "witness" against their own products and thus that their statements should be subject to the recognized privilege against discovery of witness statements is creative. But defendants cite no authority for their argument that the privilege extends to manufacturer's product evaluation reports. Courts have routinely examined documents submitted to government agencies by outside consultants as inter-agency memoranda which may, or may not, be deliberative. *See Ryan, supra,* 617 F.2d at 789–91; *Soucie v. David,* 448 F.2d 1067, 1078 n. 44 (D.C. Cir.1971); *Canadian Javelin, Ltd. v. Securities and Exchange Commission,* 501 F.Supp. 898, 903 (D.D.C.1980). Indeed, the Williams Declaration at Attachment 2 suggests that the reports at issue may be discoverable in civil litigation—a fact which militates against their being protected by Exemption 5 at all, much less as absolutely as a witness statement. The reports are properly classified as submissions by outside consultants. Defendants' attempt to classify the reports at issue as "witness statements" must fail.

■ As to the Air Force's argument that the reports are protected from disclosure under Exemption 5, reports submitted to an agency by outside consultants may be considered inter-agency or intra-agency memoranda. *Ryan, supra,* 617 F.2d at 790; *Soucie, supra,* 448 F.2d at 1078 n. 44. Plaintiffs argue that because "[t]he Air Force makes available to the public under FOIA technical reports or engineering evaluations prepared by government employees," reports by outsiders cannot be protected under Exemption 5. But, by disclosing one type of information the Air Force does not waive its claim as to the confidentiality of other items. The Air Force affidavits indicate that these reports are obtained on a promise of confidentiality. Williams Declaration at ¶¶ 19, 22; Lane Affidavit at 2. The reports by contractors are thus protected by the deliberative process privilege. Nevertheless, reasonably segregable factual portions must be disclosed. 5 U.S.C. § 552(b). *In camera* review reveals that in fact most of the report at issue is purely factual. The accompanying Order will require the Air Force to file, by a date certain, on the public record, a copy of the report with only those parts of the

report which expose findings, conclusions and recommendations of the outside contractor redacted. The Air Force shall also file under seal a copy of the report with the redactions marked with a highlighter.

On the issue of contractor's reports, plaintiffs argue that:

[t]he Williams and Lane affidavits are significant because they affirmatively demonstrate that any claim by the Air Force that its secret accident report is protected by the deliberative process privilege is unfounded.

Plaintiffs' Response at 8. Plaintiffs contend that because the reports were produced through consultations with parties outside the government, the deliberative process privilege cannot apply and the entire safety reports should be disclosed. In *Mead Data Central, supra,* our Court of Appeals observed:

Predecisional materials are not exempt merely because they are predecisional; they must also be part of the deliberative process within a government agency.... The documents in this case which would reveal the Air Force's internal self-evaluation of its contract negotiations, including discussion of the merits of past efforts, alternatives currently available, and recommendations as to future strategy, fall clearly within this test. Information about the "deliberative" or negotiating process outside an agency, between itself and an outside party, does not.

566 F.2d at 257 (citation omitted). Here, as in *Mead Data Central,* argue plaintiffs, portions of the safety report have "already been fully disclosed to at least one party outside the Department ... and the Department has no control over further disclosure." *Id.* at 258.

In support of their argument that portions of the safety report have already been disclosed to a party outside the government, plaintiffs refer to the Lane Affidavit, which states:

Inasmuch as all participants in the accident investigation, both civil and military, work closely together toward the common goals of increased safety and the prevention of accidents, there is by necessity an uninhibited, free, open and informal exchange of ideas, comments, opinions, analyses, hypotheses, conjectures, computations, studies, recommendations and conclusions between such participants regarding the individual aircraft mishap involved.

. . . .

Had not the contractor as well as its individual representatives been afforded the protection of confidentiality for its comments, opinions, analyses, hypotheses, conjectures, computations, studies, conclusions and recommendations made in connection with these previous investigations, such frank and open involvement by contractor personnel in the deliberative process of the Board would be discouraged and impeded in future mishap investigations.

Lane Affidavit at 2. Plaintiffs argue that the statements by Lane imply a flow of information both from the contractor to the Board, and from the Board to the contractor. The Williams Declaration further supports plaintiffs' argument. According to General Williams:

From my own knowledge and experience in conducting aircraft mishap investigations, I can say that contractor representatives conduct their investigations in concert with Air Force investigators. There is a free and open exchange and discussion of information concerning observations, theories, and opinions between the SIB members and the contractor employees.

Williams Declaration at ¶ 19.

The Air Force has completely failed to answer this allegation of plaintiffs', although it was made in April, Plaintiffs' Response at 8–9, and defendants have since submitted two filings rebutting other of plaintiffs' contentions. Moreover, neither party cites *Cooper, supra,* where the Court noted that:

limited disclosure to proper outside persons [manufacturer's representatives on a 'need-to-know' basis] as are necessary to carry out effectively a purpose for

assembling a governmental report in the first place do not waive its privilege. 558 F.2d at 278 (citation omitted). *See also United States v. American Telephone & Telegraph Co.*, 86 F.R.D. 603, 645 (D.D.C. 1979); *Education/Instruction, Inc. v. United States Department of Housing and Urban Development*, 471 F.Supp. 1074, 1081 (D.Mass.1979). Because it has failed to offer any explanation or justification for a breach of confidentiality, the Air Force has not met its burden as to portions of the safety report disclosed to its contractor. That does not, however, mean that it cannot do so. The accompanying Order will direct that the Air Force file, by a date certain, on the record, an explanation of what portions of its safety report have been divulged to outsiders, and any justification for nevertheless protecting that information from disclosure under the FOIA.

## ORDER

For reasons stated in the accompanying Memorandum, it is this 20th day of November, 1985, hereby

ORDERED: that the defendant Department of the Navy shall file on or before December 9, 1985: (1) on the public record, a copy of the Navy safety report with the redactions representing only Board findings, conclusions and recommendations; and facts derived from confidential witness statements; (2) under seal, a copy of the entire Navy safety report with the redactions made pursuant to (1), above, marked with a highlighter, one color for the Board's findings, conclusions and recommendations, and another color for the facts derived from confidential witness statements; (3) under seal, an affidavit which states for every fact redacted from (1) above, the name of the witness who supplied the fact; (4) on the public record, an explanation for the lack of a factual summary of "all corrective action ordered by any operational commander" in the close out message to the Navy safety report; (5) on the public record, a detailed justification for the application of some FOIA exemption other than Exemption 2 to the materials listed in ¶¶ 13(c), (d), and (e) of the Breast Affidavit; (6) on the public record, the photographs described in ¶ 13(r)(10) of the Breast Affidavit with "notations drawing attention to specific details in each photograph" redacted; and (7) on the public record, a detailed explanation stating: whether the reference to 250 photographs culled to 5 photographs in the Breast Affidavit at ¶ 10 is actual or hypothetical; if actual, whether the 250 photographs mentioned, along with all other evidence other than confidential witness statements considered by the Safety Board, were made available to the Collateral Board; and if not, where the photographs are, or how and why they were "seemingly discarded"; and it is further

ORDERED: that the defendant Department of the Air Force shall file, on or before December 9, 1985: (1) on the public record, a statement of the facts detailed in the Williams Declaration at ¶ 4 which are not derived from confidential witness statements; (2) on the public record, the information in blocks 13, 15 and 16 described in the Williams Declaration at ¶ 6; (3) on the public record, a copy of the technical reports and engineering evaluations withheld by the Air Force with redactions solely of the contractor's findings, conclusions and recommendations; and (4) under seal, a copy of the technical reports and engineering evaluations withheld by the Air Force with the redactions made pursuant to (3), above, marked with a highlighter; and (5) on the public record, an explanation of what portions of the Air Force safety report have been disclosed to individuals outside the government, and any justification for nevertheless protecting that information from disclosure under the FOIA; and it is further

ORDERED: that plaintiffs shall file, on or before December 18, 1985, any response to defendants' filings.