**Inderjit BADHWAR, et al.,**
**Appellants/Cross-Appellees,**

v.

**UNITED STATES DEPARTMENT OF**
**the AIR FORCE, et al.,**
**Appellees/Cross-Appellants.**

Nos. 86–5243, 86–5270.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 23, 1987.

Decided Sept. 22, 1987.

Raymond D. Battocchi, with whom Walter H. Fleischer and Alfred F. Belcuore, Washington, D.C., were on brief, for appellants/cross-appellees.

Bruce G. Forrest, Atty., U.S. Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., and Leonard Schaitman, Atty., U.S. Dept. of Justice, Washington, D.C., were on the brief, for appellees/cross-appellants.

Before RUTH BADER GINSBURG and BUCKLEY, Circuit Judges, and THOMAS E. FAIRCHILD,* U.S. Senior Circuit Judge for the Seventh Circuit.

Opinion for the Court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

The issues we face in these consolidated Freedom of Information Act appeals involve access to information contained in confidential aircraft accident reports com-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

piled by the armed services. The district court held that certain portions of the accident reports could be disclosed while others were privileged. We uphold the district court on every count upholding a privilege; we vacate and remand for reconsideration the district court's decision to order the disclosure of certain portions of the reports.

## I. BACKGROUND

These appeals involve three cases in which journalists have sought to obtain various reports and other documents from the Army, Navy, and Air Force concerning military aircraft accidents.

Following every accident involving a military aircraft, the service involved initiates two parallel investigations. The first, which leads to the preparation of a confidential "safety" or "mishap report," is an attempt to enable the service to secure the quality of information and candid opinions required in order to identify the specific causes of the accident and thus prevent its repetition. The second, "collateral" investigation is carried out by personnel not involved in the mishap investigation. The collateral investigators prepare an account of the accident and collect evidence for use in disciplinary proceedings, civil litigation, and for all purposes other than accident prevention and aviation safety. Collateral reports are available to the public.

As military investigative boards do not have the power to compel testimony, they must rely on the willingness of military personnel to be absolutely candid about their own performance and the performance of others, and on the willingness of manufacturer's representatives to highlight possible shortcomings in their own products. The operating theory behind the mishap investigation is that only a credible promise of confidentiality will enable the services to secure the kind of information needed to properly analyze accidents and prevent recurrences.

The district court held in each case that the information contained in mishap reports is privileged under the Freedom of Information Act ("FOIA"), which expressly exempts the following types of information from disclosure:

[M]atters that are—

\* \* \* \* \* \*

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(6) personnel· and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

\* \* \* \* \* \*

5 U.S.C. § 552(b) (1982).

In *Badhwar v. U.S. Dep't of the Air Force,* 615 F.Supp. 698 (D.D.C.1985) (*"Badhwar I"*), the district court held that *United States v. Weber Aircraft Corp.,* 465 U.S. 792, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984), and *Machin v. Zuckert,* 316 F.2d 336 (D.C.Cir.), *cert. denied,* 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963), precluded disclosure of confidential witness statements obtained in military aircraft accident investigations leading to the preparation of mishap reports. *Badhwar I,* 615 F.Supp. at 702. In *Badhwar v. U.S. Dep't of the Air Force,* 622 F.Supp. 1364 (D.D.C.1985) (*"Badhwar II"*), the district court held that the services could withhold predecisional material from aircraft accident investigations under the deliberative process privilege incorporated into Exemption 5, but that any "final decisions" must be disclosed. *Badhwar II,* 622 F.Supp. at 1371–72. In *Badhwar v. U.S. Dep't of the Air Force,* 629 F.Supp. 478 (D.D.C.1986) (*"Badhwar III"*), after having examined certain material *in camera,* the district court entered final judgment in accordance with joint proposals of the parties and issued an order listing the material exempt from disclosure as well as that which must be disclosed. *Badhwar III,* 629 F.Supp. at 482–83.

The journalists appeal each of the three rulings, claiming that the district court erred in its interpretation of FOIA. The armed services contend on cross-appeal that the district court erred in ordering the disclosure of portions of contractors' re-

ports and autopsy reports, both of which are part of the mishap reports at issue.

## II. DISCUSSION

### A. *The Machin Privilege*

■ *Machin v. Zuckert* involved a civil lawsuit against an aircraft company brought by the sole surviving crewmember of an Air Force B–25 bomber that crashed shortly after one of the pilots reported an overspeeding propeller. The plaintiff sought production of certain reports in the files of the Department of the Air Force. The Secretary of the Air Force asserted a claim of privilege, and the district court granted the Secretary's motion to quash plaintiff's subpoena. On appeal, the Court of Appeals upheld the Secretary's claim of privilege, with minor limited exceptions. In *Weber Aircraft*, the Supreme Court expressly held that FOIA Exemption 5 incorporates the *Machin* privilege protecting confidential statements made to military air crash safety investigators. 465 U.S. at 796, 798–804, 104 S.Ct. at 1492–95.

Appellants argue that the *Machin* privilege has been discredited over the last twenty-four years of aircraft history and should thus be abandoned. Brief for Appellants at 17 ("experience demonstrates that the basis of [the *Machin*] decision is wrong"). Appellants attempt to demonstrate through statistics and analysis that *Machin*, in retrospect, was decided wrongly. Appellants try to compare civilian and military accident data in support of the proposition that the military's "privileged" investigative process is counterproductive to its end of safety.

This is the wrong case in which to suggest revisiting the *Machin* privilege. The appropriate context would be a case involving the discovery process, which is the context in which the *Machin* privilege was enunciated. To decide the issue in a FOIA case would be inappropriate, as Exemption 5 requires the application of existing rules regarding discovery, not their reformulation. *See Weber Aircraft*, 465 U.S. at 799, 104 S.Ct. at 1492–93 ("Exemption 5 simply incorporates civil discovery privileges"). We therefore affirm the district court's

decision upholding nondisclosure of statements provided by third-party witnesses to the military accident investigative boards. "[S]ince the *Machin* privilege is well recognized in the case law as precluding routine disclosure of the statements, the statements are covered by Exemption 5." *Id.*

### B. *Materials Found Exempt From Disclosure*

■ Appellants argue that they are entitled to the witness statements of government employees which, they assert, *Machin* held not to be privileged. Brief for Appellants at 37–39. Appellants also argue that they are entitled to the findings, conclusions, and recommendations in each of the mishap reports. *Id.* at 39–52.

In *Machin* this court stated:

> [I]t appears to us that certain portions of the report could be revealed without in any way jeopardizing the future success of Air Force Accident investigations. We refer to the factual findings of Air Force mechanics who examined the wreckage. Their investigations and reports would not be inhibited by knowledge that their conclusions might be made available for use in future litigation, and their findings may well be of utmost relevance to the litigation now pending between appellant and United Aircraft. Moreover, we have in the past suggested that information of this sort would ordinarily be subject to subpoena for use in connection with litigation to which it is relevant.

316 F.2d at 340 (footnote and citation omitted).

The principal issue involved in the distinction between disclosable and non-disclosable parts of mishap reports is whether the material sought was "obtained in large part through promises of confidentiality" or otherwise reflects official "deliberations or recommendations as to policies that should be pursued." 316 F.2d at 339. This test is adequate to distinguish between those government employees whose statements are not privileged (e.g., nonimplicated mechanics reporting on the wreckage)

and those whose candor depends on the assurance of non-disclosure. The district court had an opportunity to view the various reports in their entirety and appropriately drew the line between privileged and unprivileged material. *See* 316 F.2d at 341 ("Where the line is properly drawn between privileged and unprivileged statements appearing in the mechanics' reports is impossible to ascertain without viewing the reports themselves in their entirety."). We affirm the district court's order upholding the withholding of the above items for the reasons set forth in *Badhwar II* and *Badhwar III*.

### C. *Materials Ordered Disclosed*

#### 1. Factual Portions of the Contractors' Reports

The district court ordered the disclosure of the factual portions of the reports and evaluations submitted by contractors' representatives to military accident boards. *Badhwar III*, 629 F.Supp. at 483 (paragraph (2)(f) of the Order). The government's position is that, as is the case with any other solicited reports, the contractors' reports, in their entirety, are exempt "confidential witness statements" under the *Machin* privilege. Brief for Appellees/Cross-Appellants at 60–61.

█ The government's argument is bolstered by direct language in the *Machin* decision referring specifically to reports from contractors who have a vested interest in the subject matter of the investigation:

> Lacking the power to compel testimony, the [Air Force] investigators encourage frank and full cooperation by means of promises that witnesses' testimony will be used solely for the purposes of flight safety and will not be revealed to persons outside the Air Force.... "Technical representatives of the aviation industry currently assisting in aircraft accident investigations could not be expected to find their company at fault if their reports could be used in actions against their companies."

316 F.2d at 339 (quoting statement of the Inspector General of the Air Force). We

find this authority persuasive. Anything that would tend to compromise the promise of confidentiality, such as the disclosure of "factual" information that may have been volunteered, would defeat the policy on which the *Machin* privilege is based.

█ When contractors have an interest in an accident such as to require the inducement of confidentiality to assure a truly candid assessment, the *Machin* privilege protects more than just the "findings, recommendations, and conclusions" of those contractors. It is not possible for us to determine from the record whether the reports the district court found not covered by Exemption 5 involved situations where the basic rationale in *Machin* would apply (e.g., Boeing engineers speaking frankly about the defects discovered in a crashed Boeing plane) as opposed to a truly third-party contractor, without an ax to grind, called in for its expert judgment. We therefore vacate the district court's ruling that the factual portions of reports submitted by contractors' representatives be disclosed and remand for reconsideration and clarification in light of this opinion.

#### 2. "Block 13" of the Autopsy Report

The district court rejected the government's claim that information contained in "Block 13" of an Air Force autopsy report was exempt from disclosure. On reviewing the material, the court concluded that Block 13 "contains only factual information. This is not deliberative and the accompanying Order will direct its disclosure." *Badhwar II*, 622 F.Supp. at 1375. In so doing, the court based its analysis exclusively on the applicability of Exemption 5. The government, however, sought withholding of the Block 13 information under Exemption 6 (invasion of personal privacy) as well as Exemption 5. Brief for Appellees/Cross-Appellants at 67. It appears, therefore, that in issuing its disclosure order, the district court may have overlooked this alternative ground for denying disclosure.

An Exemption 6 claim requires a case-by-case evaluation. Some autopsy reports,

presumably, would not be of a kind that would shock the sensibilities of surviving kin. Others clearly would. Because the district court did not address the government's Exemption 6 claim, we vacate the judgment with respect to the material contained in Block 13 of the autopsy report. On remand, the court will determine whether disclosure of the information in Block 13 would constitute a "clearly unwarranted invasion of personal privacy."

### III. CONCLUSION

We affirm the exemption from disclosure of witness statements of third parties and government employees, and of the findings, conclusions, and recommendations in each of the mishap reports. We vacate the district court's dispositions relating to the contractors' reports and Block 13 of the autopsy report and remand for reconsideration of those issues in accordance with this opinion.

*So ordered.*