**DETROIT FREE PRESS, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

No. 01–70024.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 21, 2001.

---

Cameron J. Evans, Honigman, Miller, Bingham Farms, Herschel P. Fink, Honigman, Miller, Detroit, MI, for Detroit Free Press, plaintiffs.

Francis L. Zebot, United States Attorney's Office, Detroit, MI, for Department of Justice, defendants.

### OPINION AND ORDER REQUIRING DEFENDANT TO PRODUCE DOCUMENTS FOR AN IN CAMERA REVIEW AND TO PRODUCE A VAUGHN INDEX

ROBERTS, District Judge.

### I. Introduction

This Freedom of Information Act ("FOIA") matter is before the Court on the Government's Motion for Summary Judgment. A hearing regarding the Motion was held on October 3, 2001, and the Court took the matter under advisement.

Plaintiff the Detroit Free Press seeks the disclosure of records pertaining to the disappearance of James R. Hoffa on July 30, 1975. In view of the age of the underlying criminal activity at issue, the strong public interest in the Hoffa investigation and potential bad faith on the part of the Government, the Court will perform an *in camera* review of a sample of the Hoffa file with the aid of a *Vaughn* index.

### II. Background

On August 1, 2000, the Free Press submitted FOIA requests to the Justice Department in Washington D.C. and to the Detroit Office of the Federal Bureau of Investigations ("FBI") regarding the disappearance of former Teamster International Union President James R. Hoffa, who was last seen at a restaurant in Bloomfield Township, Michigan on July 30, 1975. (*Cmpt.*, Exs. A and C). According to Free Press' Complaint, the Justice Department never responded to its FOIA request, except to acknowledge its receipt. (*Cmpt.*, Ex. B). The FBI did respond, however, and denied the Free Press' request on August 3, 2000. The FBI rea-

soned that the requested files were exempt from FOIA because their exposure could reasonably be expected to interfere with enforcement proceedings. (*Cmpt.*, Ex. D). On October 4, 2000, the Free Press administratively appealed, stating that the exemption claimed did not apply because, with the extreme passage of time, there was no concrete prospect of enforcement proceedings. (*Cmpt.*, Ex. E). In its October 30, 2000 letter to the Free Press, the Justice Department indicated its decision on the appeal would be delayed due to a substantial backlog of previously filed appeals. (*Cmpt.*, Ex. F). The decision affirming the FOIA denial was issued by letter on January 12, 2001. (*Dft's Br.*, Ex. 1–E).

In the meantime, on January 2, 2001, the Free Press filed the instant action.

### III. *Analysis*

The Free Press' request for documents was made pursuant to FOIA, 5 U.S.C. § 552. Generally, FOIA has been interpreted as favoring disclosure. *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 220–221, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). "[U]nless the requested material falls within one of [the] nine statutory exemptions, FOIA requires that records and material in the possession of federal agencies be made available on demand to any member of the general public." *Id.* at 221, 98 S.Ct. 2311.

 In this case, the Government relied upon § 552(b)(7)(A) to deny the Free Press' request. Exemption (7)(A) exempts: "(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or informa-

tion (A) could reasonably be expected to interfere with enforcement proceedings ...." That exemption is intended to make clear that investigative files that do not pertain to a pending or prospective enforcement proceeding are not exempted. *Robbins Tire*, at 230–232. Hence, "[l]aw enforcement records cannot 'reasonably be expected to interfere with enforcement proceedings' ... unless there is at least 'a reasonable chance that an enforcement proceeding will occur....'" *Dickerson v. Department of Justice*, 992 F.2d 1426, 1430 (6th Cir.1993), (quoting *Nevas v. Dept. of Justice*, 789 F.Supp. 445, 448 (D.D.C. 1992)).

In the present case, the Free Press argues that, some 26 years having passed after Hoffa's disappearance, the Government has failed to establish that it likely to ever prosecute anyone for the crime. At issue is what type of evidence the Court should evaluate to determine the propriety of the Government's claim that criminal proceedings remain a reasonable possibility.

There are essentially three types of evidence that courts rely upon when presented with FOIA challenges: affidavits, *Vaughn* indices [1] and *in camera* inspections.

A court's primary focus must be on the substance, rather than the form, of the information supplied by the government to justify withholding requested information. The government must provide evidence that enables the court to make a reasoned, independent assessment of the claim of exemption. Whether that evidence comes in the form of an *in camera* review of the actual documents,

---

**1.** "A *Vaughn* index is a routine device through which the defendant agency describes the responsive documents withheld or redacted and indicates why the exemptions claimed apply to the withheld material." *Jones v. F.B.I.*, 41 F.3d 238, 241 (6th Cir.1994). The indices were the brainchild of the court in *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973).

something labelled a 'Vaughn Index,' a detailed affidavit, or oral testimony cannot be decisive. The ultimate goals remain to '(1) assure that a party's right to information is not submerged beneath government obfuscation and mischaracterization, and (2) permit the court system effectively and efficiently to evaluate the factual nature of disputed information.' *Vaughn*, 484 F.2d at 826.

*Vaughn v. United States*, 936 F.2d 862, 867 (6th Cir.1991).

■ In cases pertaining to Exemption (7)(A), detailed affidavits from responsible investigators usually suffice. *Dickerson* at 1431.[2] Such affidavits enjoy a presumption of good faith. *Jones v. F.B.I.*, 41 F.3d 238, 242 (6th Cir.1994). Notwithstanding, the presumption of good faith articulated in *Jones* may be overcome when there is evidence of bad faith or illegality with respect to either the handling of the FOIA request or the underlying activities of the agency at issue. *Id.* When there is a showing of bad faith, affidavits are not enough. *Id.* at 242–243. Thus, although the affidavits in *Jones* were the type that court's generally rely upon, *in camera* review was necessary because the plaintiff's request involved activities that, if disclosed, would embarrass the FBI and the effect of the disclosure or exemption was of strong public interest. *Id.* at 243. "In certain circumstances the court *must* play a more active role because no other party or institution is available to ensure that the agency's assertions are reliable." *Id.*, (emphasis in original).

The Court finds that the circumstances presented in this case require the Court to take a more active role. One circumstance calling for close scrutiny is the inordinate amount of time that the Hoffa investigation has remained an allegedly pending and active investigation. *See Dickerson* at 1430, (district judge conducted an *in camera* review of a portion of the record "in view of the length of time that had elapsed since Mr. Hoffa's disappearance ....."). Another factor is the strong public interest in this case.

Of further significance is the incompatibility of allegations made in FBI declarations with disclosures subsequently made public by FBI personnel. Scott A. Hodes, the Acting Chief of Litigation Unit, Freedom of Information–Privacy Acts (FOIPA) Section at the FBI Headquarters (FBIHQ) in Washington, D.C., signed an affidavit stating that release of the records requested by Plaintiff (except those generated from public sources) could seriously impair any future enforcement proceedings by disclosing the evidence developed and being developed, and the direction and scope to the investigation. He additionally stated that release of the records would arm the perpetrator(s) with knowledge that would allow them to destroy or tamper with evidence, intimidate witnesses or construct a false alibi. (*Hodes Dec.*, ¶¶ 15 and 16). In accord, Thomas Fuentes, the Chief of the Organized Crime Section of the Criminal Investigative Division at FBI Headquarter in Washington, D.C, opined that public revelation of information in the Hoffa files would allow the perpetrators to

---

2. The *Dickerson* case was filed by an employee of the Free Press and also sought disclosure of the Hoffa file. The Sixth Circuit held that the affidavits at issue, which are very similar to those presented in this case, were sufficient. Nonetheless, because of the time that had elapsed since Hoffa's disappearance, the trial court also required that the Govern-ment present a portion of the record for *in camera* review and prepare a *Vaughn* index before deciding whether the claim of exemption would be upheld. The Sixth Circuit found the district court's approach to be sensible and within its discretion. *Dickerson* at 1431–1432.

thwart the investigation. (*Fuentes Dec.*, ¶ 4).

After the filing of those affidavits and before the October 3d hearing, the Detroit News published an article disclosing DNA evidence recently discovered by FBI scientists. Norman Sinclair and David Shephardson, *New Clue Might Mean Charges in Hoffa Death*, The Detroit News, September 7, 2001, at A1. The article states that FBI scientists found Hoffa's DNA in a strand of hair found in a car driven by his friend, Charles (Chuckie) O'Brien, on the last day that Hoffa was seen alive. This information was provided by "two sources familiar with the investigation." *Id.* Although those sources are not identified, the authors quote John E. Bell Jr., special agent in charge of the Detroit FBI bureau, as disclosing that the FBI had reinterviewed O'Brien, as confirming that DNA tests were conducted on all of the evidence and as stating that the decision to conduct DNA testing arose from a meeting in November 2000 involving current and former FBI agents and a Justice Department attorney.

The Detroit News article further details the significance of the DNA test results. It states that O'Brien had repeatedly denied that Hoffa was ever in the car, describes how O'Brien came under suspicion and sets forth in great detail the account of his whereabouts on the day of Hoffa's disappearance that O'Brien gave to the FBI. Furthermore, the News article details what FBI agents discovered when they checked out O'Brien's story, including their failure to find anyone who recognized O'Brien's picture at a car wash or at the Southfield Athletic Club, two places he said he had visited on that fateful day. The article reports that hair and specks of blood and skin were found eight days after Hoffa's disappearance in the back seats of the car O'Brien had been driving, that

trained German shepherds detected Hoffa's scent in the back seat and trunk and that a truck driver spotted Hoffa in a car like the one O'Brien had been driving pulling into the Machus Red Fox on the day in question. The newly discovered DNA evidence, the News states, has refocused the investigation onto O'Brien.

█ In short, the News article details some of the evidence developed and being developed, and the direction and scope of the investigation. It alerts O'Brien to the fact that the investigation has refocused on him, potentially allowing him to intimidate witnesses, refine his alibi and/or thwart the investigation. The disclosure of such substantial and detailed evidence to the Detroit News calls into the question the veracity of the FBI's justification for withholding the documents at issue, raising questions of bad faith. In order "to assure that [the Free Press'] right to information is not submerged beneath governmental obfuscation and mischaracterization," *Vaughn*, 484 F.2d at 826, this Court must take an more involved role to evaluate the propriety of the Government's claim exemption.

For these reasons, **THE COURT HEREBY ORDERS** the Government to produce, for *in camera* review, all documents added to the main investigative files since May 21, 1990; all documents regarding the progress of the investigation since May 21, 1990; all communications concerning reports of the investigation since May 21, 1990; and all documents pertaining to and/or arising out of the November 2000 meeting in the Detroit Division of the FBI. **THE COURT FURTHER ORDERS** the Government to produce a *Vaughn* index of the documents described above. **THE COURT FURTHER ORDERS** that the Government produce the documents for in

camera review and the *Vaughn* index by February 21, 2002.