**PLAYBOY ENTERPRISES, INC.**

v.

**DEPARTMENT OF JUSTICE, et al., Appellants.**

**No. 81–1605.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 22, 1981.

Decided May 11, 1982.

---

Mary A. McReynolds, Attorney, Dept. of Justice, Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the briefs were filed and Leonard Schaitman, Attorney, Dept. of Justice, Washington, D. C., were on the brief for appellants.

Joe R. Reeder, Washington, D. C., with whom Timothy J. May, Robert H. Koehler and Claudia L. Deering, Patton, Boggs & Blow, Washington, D. C., were on the brief for appellee.

Doris Peterson, New York City, and Charles N. Mason, Jr., Washington, D. C., were on the brief for amici curiae, Center for Constitutional Right, et al. urging affirmance.

Jack C. Landau, Washington, D. C., was on the brief for amici curiae Reporters Committee for Freedom of the Press, et al. urging affirmance.

Before ROBINSON, Chief Judge, BAZELON, Senior Circuit Judge, and ROBB, Circuit Judge.

Opinion for the Court filed by Circuit Judge ROBB.

ROBB, Circuit Judge:

This is an action under the Freedom of Information Act, 5 U.S.C. § 552 (1976 & Supp. IV 1980), by Playboy Enterprises, Inc. against the Department of Justice. Playboy seeks to compel disclosure of a report prepared by the Department's Office of Professional Responsibility. The report relates to the activities of one Gary Thomas Rowe, Jr., an FBI informant, and the treatment of Rowe by the FBI. The Department asserted in the District Court that certain parts of the report are protected by various provisions of the FOIA, and in addition contended that the entire report is exempt from disclosure under 5 U.S.C. § 552(b)(5) (1976), known as Exemption 5. Exemption 5 provides that the Freedom of Information Act "does not apply to matters that are ... inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." The District Court accepted the Department's claims of protection for specific parts of the report, but rejected the all-inclusive Exemption 5 argument. The Department appeals, alleging that the court misapplied Exemption 5.

In July of 1978 the *New York Times* published a series of articles concerning allegations that in the early 1960s G. Thomas Rowe, Jr., had committed violent crimes while working as an FBI informant inside the Ku Klux Klan. The newspaper stories were followed by an ABC television "documentary" program suggesting that in March of 1965 Rowe fired the bullet which killed Viola Liuzzo, a civil rights worker. Mrs. Liuzzo was shot while traveling an Alabama highway on her return from participation in the Selma to Montgomery freedom march.

In response to these stories, Senators Kennedy and Abourezk, the Chairman and a member of the Senate Judiciary Committee, submitted a written request to the Department for a report on the matter. After a preliminary investigation by the Department's Office of Professional Responsibility, the Attorney General, on October 24, 1978, established a task force within that office to make a detailed report. On November 2, 1978 the Attorney General set out three issues for the task force to explore:

(1) Whether FBI personnel acted improperly in handling Mr. Gary Thomas Rowe while he served as a Bureau Informant within the United Klans of America (UKA);

(2) Whether Civil Rights Division attorneys, who tried *United States v. Eaton*, et al. (the federal civil rights case arising out of the highway murder of Mrs. Viola Liuzzo), were aware of Mr. Rowe's alleged unreliability or suspected he was unreliable; and

(3) Whether there is any evidence to substantiate the allegation that Mr. Rowe was responsible for the death of Mrs. Viola Liuzzo (to the extent this is possible without prejudicing the rights of Mr. Rowe or the State of Alabama in view of Mr. Rowe's recent state indictment for the murder).

(J.A. at 167)

In July of 1979, after working on the investigation for more than eight months, the task force submitted a 302-page document to the Attorney General, called the "Rowe Report." In preparing the Report, the task force reviewed approximately 800 volumes of FBI records located in Atlanta, Birmingham, Mobile, Savannah, and Washington, D. C., and conducted sixty-four interviews of past and present FBI agents, Justice Department attorneys, state and local law enforcement officials, FBI informants, and Ku Klux Klan members. On December 15, 1980, after this litigation began, the Attorney General submitted to

Senator Kennedy a twenty-five page "Summary of Results" of the investigation.

On March 21, 1980 Playboy submitted a FOIA request for the Rowe Report. On April 4, 1980, having received no response from the Department, Playboy filed an administrative appeal. On April 11, 1980 the Department denied Playboy's March 21 request, claiming the entire Report was exempt from disclosure under 5 U.S.C. §§ 552(b)(2), (3), (5)–(7)(D) (1976).[1]

On May 8, 1980, in the absence of a timely response to its April 4 administrative appeal, Playboy commenced this action in the United States District Court for the District of Columbia. In its defense, the Department referred to the same exemptions invoked in its April 11 letter to Playboy.

The parties filed cross-motions for summary judgment. In ruling on the motions the District Court reviewed the pleadings and supporting memoranda, five affidavits submitted by the Department, one affidavit submitted by *amicus curiae*, the Attorney General's "Summary of Results" prepared for Congress, eighteen pages of the Rowe Report which had been released in an unrelated civil suit, and eleven pages of the Report which were submitted *in camera*.

The court did not review the remaining 273 pages of the Report; neither party requested that it do so, nor did the court *sua sponte* request that the entire Rowe Report be made available for *in camera* review.

On March 31, 1981 the District Court, 516 F.Supp. 233, ordered that the Rowe Report be given only limited protection from disclosure. The court held that three exemptions applied: first, 5 U.S.C. § 552(b)(7)[2] required the deletion of names and identifying data of FBI agents, certain third parties, and confidential sources, and the deletion of confidential information furnished only by confidential sources; second, 5 U.S.C. § 552(b)(3)[3] required the deletion of summaries of evidence received by a grand jury; and third, 5 U.S.C. § 552(b)(5)[4] required deletion of segments of the Report *"specifically* designated as conclusions, recommendations, opinions, or advice of the task force." (J.A. at 188) (emphasis in original) The District Court ordered that remaining portions of the Rowe Report be disclosed except for pages one through sixteen which were not addressed in the Order. The court stayed its Order pending resolution of this appeal.

On this appeal the Department makes three allegations of error; all concern the

---

1. On April 18, 1980 the Department turned over eighteen pages of the Rowe Report which had been released in a separate non-FOIA civil action.

2. Exemption 7 provides:

   . . . [The Freedom of Information Act] does not apply to matters that are . . . investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel. . . .

   5 U.S.C. § 552(b)(7) (1976).

3. Exemption 3 provides:

   . . . [The Freedom of Information Act] does not apply to matters that are . . . specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld. . . .

   5 U.S.C. § 552(b)(3) (1976). The provision relied on in conjunction with Exemption 3, contained in Federal Rule of Criminal Procedure 6(e), protects the secrecy of grand jury proceedings.

4. Exemption 5 provides:

   . . . [The Freedom of Information Act] does not apply to matters that are . . . interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency. . . .

   5 U.S.C. § 552(b) (1976).

District Court's ruling on Exemption 5. The Department argues: (1) that the court erred in not extending protection to the entire Rowe Report under the deliberative process privilege encompassed by Exemption 5; (2) that aside from the court's determination of the deliberative process issue it was error to find that interlocutory discovery rulings concerning the Rowe Report made in separate non-FOIA civil actions were not conclusive on the Exemption 5 question; and (3) that, even assuming that the entire Rowe Report is not protected by Exemption 5, the District Court erred in limiting Exemption 5 protection to conclusions, recommendations, opinions, and advice that are "specifically" designated as such.

■ The "deliberative process privilege" of Exemption 5 protects from disclosure opinions and recommendations on which governmental decisions are based. *EPA v. Mink*, 410 U.S. 73, 89–91, 93 S.Ct. 827, 836–837, 35 L.Ed.2d 119 (1973); *Brinton v. Department of State*, 204 U.S.App. D.C. 328, 333–34, 636 F.2d 600, 605–06 (1980), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981); *Jordon v. Department of Justice*, 192 U.S.App.D.C. 144, 163, 591 F.2d 753, 772 (1978). The exemption does not protect "purely factual material appearing in . . . documents in a form that is severable without compromising the private remainder of the documents." *EPA v. Mink*, 410 U.S. at 91, 93 S.Ct. at 837. The District Court found that the Rowe Report

> contains some portions which reflect the advice, conclusions, and recommendations of the task force, and that these portions are protected from disclosure pursuant to Exemption 5. However, it is only those segments of the Report which consist of or contain the advice, conclusions, and recommendations of the task force on legal or policy matters, which are to be withheld.

(J.A. at 176–77) In other words, the court concluded that the factual material in the Report is severable from those parts which are protected. In its brief in this court

Playboy endorses this analysis, emphasizing that it does not "wish to probe the process whereby the task force assigned reliability or weight to specific evidence. Rather, it merely seeks the facts that were uncovered in this investigation of alleged government misconduct in the early 1960's." (Brief for Appellee at 25–26) The Department, on the other hand, argues that the entire Rowe Report reflects the "choice, weighing and analysis of facts" by the task force, and is therefore protected as a part of the deliberative process. (Brief for Appellant at 25) According to the Department "it is the very narration of the facts that reflects the evidence selected and credited." *Id.*

■ We are not persuaded by the Department's argument. Anyone making a report must of necessity select the facts to be mentioned in it; but a report does not become a part of the deliberative process merely because it contains only those facts which the person making the report thinks material. If this were not so, every factual report would be protected as a part of the deliberative process.

■ The District Court correctly held that the "deliberative process privilege is . . . dependent upon the individual document and the role it plays in the administrative process." (J.A. at 173) Accordingly, the court examined a few pages of the Rowe Report, submitted by the Department *in camera*, together with an *in camera* affidavit explaining the process by which the task force made its findings. Upon this basis the District Court concluded that for the most part the Report neither "reveals the deliberative process engaged in by the task force nor is it intertwined with the policy-making process of the decision maker"—the Attorney General. *Id.* at 173–74. The court found that the only mission of the task force was "to investigate the facts surrounding certain events." *Id.* at 174. We agree with the District Court.

The Department relies on this court's decision in *Montrose Chemical Corp. v. Train*, 160 U.S.App.D.C. 270, 491 F.2d 63 (1974). In that case the Administrator of the Environmental Protection Agency had instruct-

ed his staff to prepare written summaries of evidence received in an adjudicatory hearing. Pursuant to the FOIA, the plaintiff corporation sought disclosure of the staff-prepared summaries. The Administrator argued that the summaries were protected by the deliberative process privilege of Exemption 5. It was undisputed that the documents were largely compilations of facts, devoid of any conclusions, recommendations, opinions or advice. *Id.* at 274, 491 F.2d at 67; it was also undisputed, however, that they were prepared for the sole purpose of assisting the Administrator in his study of the record, so that he could make a decision in the administrative case. *Id.* at 272, 491 F.2d at 65.

In deciding the *Montrose Chemical* case we recognized the facts-opinions dichotomy which had been adopted in *EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). We concluded, however, that "[i]n the case at bar this factual versus deliberative distinction is inadequate to resolve the difficult question whether the factual summaries should be exempt from disclosure." 160 U.S.App.D.C. at 274, 491 F.2d at 67. We found that because of the intended use of the summaries, disclosure would allow inquiry into the administrative decision-maker's mental processes.

> To probe the summaries of record evidence would be the same as probing the decision-making process itself. To require disclosure of the summaries would result in publication of the evaluation and analysis of the multitudinous facts made by the Administrator's aides and in turn studied by him in making his decision. Whether he weighed the correct factors, whether his judgmental scales were finely adjusted and delicately operated, disappointed litigants may not probe his deliberative process.

*Id.* at 275, 491 F.2d at 68 (footnote omitted).

From what has been said we think it plain that this case must be distinguished from the *Montrose Chemical* case. In that case summaries were prepared for the sole purpose of assisting the Administrator to make a complex decision in an adjudicatory proceeding. Disclosure of the summaries would have permitted inquiry into the mental processes of the Administrator by revealing what materials he considered significant in reaching a proper decision, and how he evaluated those materials. The Rowe Report on the other hand was prepared only to inform the Attorney General of facts which he in turn would make available to members of Congress.

For similar reasons the Department's argument is not supported by *Mead Data Central, Inc. v. Department of Air Force*, 184 U.S.App.D.C. 350, 566 F.2d 242 (1977). In that case we held that documents containing discussions among agency personnel about the relative merits of various positions, which might be adopted by the Air Force in future contract negotiations, were protected by Exemption 5. That material was clearly deliberative in nature, in contrast to the document requested in this case.

■ The Department's remaining contentions can be disposed of in a few words. We reject the argument that because the government's claim of privilege with respect to the Rowe Report had been sustained in discovery proceedings in other cases the District Court ought to have given "controlling weight" to those determinations. The short answer to the Department's contention is that the issues in discovery proceedings and the issues in the context of a FOIA action are quite different. That for one reason or another a document may be exempt from discovery does not mean that it will be exempt from a demand under FOIA. *See, e.g., EPA v. Mink*, 410 U.S. 73, 86, 93 S.Ct. 827, 835, 35 L.Ed.2d 119 (1973); *Coastal States Gas Corp. v. Department of Energy*, 199 U.S.App.D.C. 272, 280, 617 F.2d 854, 862 (1980).

■ The District Court's order provided that "the defendant shall exercise from any portion of the Report that is otherwise to be released, any segments of the Report that are *specifically* designated as conclusions, recommendations, opinions, or advice of the task force making the Report." (J.A. at 188) (emphasis in original) The Depart-

ment of course agrees that the court properly approved the withholding of conclusions, recommendations, opinions, or advice; but the Department says it was error to restrict the withheld material to that "specifically designated." We agree with the Department. The report may contain conclusions, recommendations, or opinions which are not designated as such and which are severable from the statements of fact contained in the report. These parts of the report are not subject to disclosure.

The case is remanded to the District Court with directions to modify its disclosure order in accordance with this opinion. In all other respects the judgment of the District Court is

*Affirmed.*