Stephen E. NEVAS, Plaintiff,

v.

DEPARTMENT OF JUSTICE, Defendant.

John R. MAPOTHER, Plaintiff,

v.

DEPARTMENT OF JUSTICE, Defendant.

Civ. A. Nos. 89–0042, 89–0043.

United States District Court, District of Columbia.

April 29, 1992.

David Charney Vladeck, Public Citizen Litigation Group, Washington, D.C., for plaintiffs.

Marina Utgoff Braswell, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Before this Court are cross motions for summary judgment and the oppositions and replies thereto. In addition, this Court has reviewed a classified declaration pursuant to our Order of December 6, 1989. For the reasons stated below, we will grant plaintiffs' motion for summary judgment and deny defendant's motion for summary judgment.

In these consolidated actions under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, plaintiffs seek access to records in the possession of the Depart-ment of Justice ("the Department" or "DOJ") relating to the Department's decision to exclude Austrian President Kurt Waldheim from the United States and place him on the "Watchlist" of excludable aliens maintained by the Immigration and Naturalization Service. The Waldheim Report is a 204-page memorandum with 26 photographs attached, produced by an attorney, Neal M. Sher, Director, Office of Special Investigations ("OSI"), Criminal Division, United States Department of Justice, for use by the Attorney General in making his decision on Waldheim's excludability under the immigration laws. Declaration of Frank R. Newett at ¶¶ 8, 9a. The Department has withheld these records on the basis of FOIA Exemptions 5 and 7(A), 5 U.S.C. § 552(b)(5), (b)(7)(A). Because we find that neither of these exceptions apply, we will order that the Waldheim Report and the historical documents which underlie it be released, subject to some limited deletions.[1]

### Exemption 5

■ The Waldheim Report was withheld pursuant to 5 U.S.C. § 552(b)(5), which exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party ... in litigation with the agency." To come within this exception, a document must be both (1) predecisional, in that it is "received by the decisionmaker on the subject of the decision prior to the time the decision is made," *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 151, 95 S.Ct. 1504, 1517, 44 L.Ed.2d 29 (1975), and (2) deliberative, in that it "reflects the give-and-take of the consultative process." *Wolfe v. Department of Health and Human Services*, 839 F.2d 768, 774 (D.C.Cir.1988) (*en banc*) (quoting *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854 (D.C.Cir.1980)).

The privilege for deliberative materials, however, is a limited one. In *Environ-*

---

**1.** This outcome differs from that reached in *St. Hilaire v. Department of Justice*, No. 91–0078, 1992 WL 73545 (D.D.C. March 18, 1992). That case, however, was brought *pro se,* and a review of the filings there convinces us that the Court in *St. Hilaire* did not have the benefit of a thorough briefing of the legal issues.

*mental Protection Agency v. Mink,* 410 U.S. 73, 87–88, 93 S.Ct. 827, 836–37, 35 L.Ed.2d 119 (1973), the Supreme Court held that Exemption 5 does not extend to "memoranda consisting only of compiled factual material or purely factual material severable from its context." This holding was expressly accepted and expanded by Congress a year later in the 1974 amendments to the Act. *See* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."). Consequently, it is well established that the deliberative process privilege "applies only to the 'opinion' or 'recommendatory' portion of [a] report, not to factual information which is contained in the document." *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 867 (D.C.Cir. 1980).

An exception exists to the general rule (*i.e.,* that all factual material must be disclosed) where the release of the factual information would reflect or reveal the deliberative process. In *Montrose Chemical Corp. v. Train,* 491 F.2d 63, 64–65 (D.C.Cir. 1974), the disputed documents were two factual reports prepared by Environmental Protection Agency staff summarizing evidence contained in the 9,200–page public record created during eight months of hearings on the pesticide DDT. The court held that "[w]hen a summary of factual material on the public record is prepared by the staff of an agency administrator, for his use in making a complex decision, such a summary is part of the deliberative process, and is exempt from disclosure under exemption 5 of FOIA." *Id.* at 71. The *Montrose* exception, however, is a narrow one, as the court itself noted. *Id.* ("Where the factual material is not already in the public domain, a different result might be reached."); *see also* 1 Braverman & Chetwynd, *Information Law* § 9–4.3 at

371 (1985) ("[t]he *Montrose* exception is relatively rare").

More relevant to the instant dispute than *Montrose* is the D.C. Circuit's decision in *Playboy Enterprises, Inc. v. Department of Justice,* 677 F.2d 931 (D.C.Cir.1982). Plaintiff there sought to compel disclosure of an FBI report concerning an investigation into an informant who had been involved in violence surrounding the Freedom March of 1965. *Id.* at 933–34. The Department contended that the entire report should be protected under Exemption 5, arguing that the totality of the document "reflects the 'choice, weighing and analysis of facts' by the task force, and is therefore protected as a part of the deliberative process." *Id.* at 935 (citation omitted). The court rejected this argument, holding that "a report does not become a part of the deliberative process merely because it contains only those facts which the person making the report thinks material." *Id.* The court distinguished *Montrose,* limiting its application to situations where the release of factual summaries would allow inquiry into the mental processes of the administrator.[2] *Id.* at 936.

In this case, DOJ argues that the factual material in the Waldheim Report is so interwoven into the deliberative portions as to be nonsegregable. Defendant's Statement of Material Facts To Which There Is No Genuine Dispute at ¶ 7. The Department supports this assertion by stating that

> the entire report is based on a distillation of documents and facts by OSI and its separation of the significant from the insignificant and the truthful from the untrue. Disclosure of the facts in this case would reveal those facts OSI thought would be most significant for the decisionmaker to have, as distinguished from the more voluminous non-

---

**2.** Defendant argues that the *Playboy* decision should be limited to the specific situation presented there, in which a factual report was an end in itself. Defendant's Response to Plaintiffs' Cross–Motion for Summary Judgment at 7. Defendant misreads the case. As we point out above, *Playboy* limits the application of *Mont-*

*rose* to its factual setting. *Supra* at 447; *see also ITT World Communications, Inc. v. Federal Communications Commission,* 699 F.2d 1219, 1239 (D.C.Cir.1983) (following *Playboy* and limiting the rule of *Montrose* to "suits seeking disclosure of staff summaries of record evidence in adjudicatory and rulemaking proceedings.").

significant facts, and thus would reveal the deliberative process itself.

*Id.*

This, however, is the same argument the court rejected in *Playboy*, stating that "a report does not become part of the deliberative process merely because it contains only those facts which the person making the report thinks material." 677 F.2d at 935. There are surely deliberative portions of the Waldheim Report which should be deleted (pursuant to *Mink* and § 5 U.S.C. § 552(b)) prior to its release. But it is obvious that a significant portion of the 204–page document is devoted to "purely factual material" which must be released under FOIA. *Mink*, 410 U.S. at 91, 93 S.Ct. at 837–38.

We therefore hold that Exemption 5 does not protect the Waldheim Report and the historical records associated therewith from disclosure. However, defendant need not disclose those portions of the Report containing conclusions, recommendations, or opinions. *See Playboy*, 677 F.2d at 936–37.

Exemption 7(A)

██ The Waldheim Report was also withheld pursuant to 5 U.S.C. § 552(b)(7)(A), which protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to interfere with enforcement proceedings...."

Even if this Court assumes that a legal challenge by President Waldheim to the placement of his name on the Watchlist would constitute an "enforcement proceeding" (a proposition which we doubt is true),[3] it is obvious that for there to be a reasonable chance that the release of information will interfere with enforcement proceedings, there must be a reasonable chance that an enforcement proceeding will occur at all. President Waldheim, not the Department, is in total control of whether he will attempt to enter this country without a visa or special authority and of whether he will challenge the Attorney General's decision to place him on the Watchlist. This being so, the likelihood of an enforcement proceeding is next to nil because of Waldheim's world prominence. There is little realistic chance that the Austrian President would submit to the authority of the United States to determine whether he is a Nazi war criminal. This is further supported by the fact that Waldheim has been on the Watchlist for more than five years without challenging the Attorney General's decision. The Department has submitted nothing which leads us to believe that there is a real possibility of any proceeding occurring here that would justify invoking Exemption 7(A). We therefore reject this defense to disclosure.

Conclusion

Because this Court finds that neither Exemption 5 nor Exemption 7(A) justify the withholding of the Waldheim Report and the historical records which underlie it, we will order that they be released, subject to the following provisos: (1) those portions of the Waldheim Report containing conclu-

---

**3.** DOJ has not cited any support for its underlying assumption that the term "enforcement proceedings" embraces proceedings in which the Department is the defendant as opposed to the prosecutor or plaintiff, nor can we find support for this proposition. *See* Annotation, What Are "Enforcement Proceedings" Within Freedom Of Information Act Exemption From Disclosure Of Investigatory Records That Would Interfere With Enforcement Proceedings, 55 A.L.R.Fed. 583 (1981) (no such case cited). Indeed, in an oft-quoted statement, the sponsor of Exemption 7(A), Senator Hart, explained that the exemption "would apply whenever the Government's case in court—a concrete prospective law enforcement proceeding—would be harmed by the premature release of evidence or information not in the possession of known or potential *defendants.*" *Freedom of Information Act and Amendments of 1974, Source Book: Legislative History, Texts, and Other Documents,* Committee on Government Operations, U.S. House of Representatives 333 (1975) (emphasis added) (quoted in part in *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 232, 98 S.Ct. 2311, 2322, 57 L.Ed.2d 159 (1978)). This understanding of "enforcement" comports with its dictionary definition, "to compel observance of" the law. *Webster's II: New Riverside University Dictionary* 432 (1984). For these reasons, we do not believe that a possible challenge by President Waldheim to the placement of his name on the Watchlist would constitute an enforcement proceeding.

sions, recommendations, or opinions need not be disclosed; (2) those historical records that the Department has asserted in this action are protected by Exemptions 1 or 7(D) of FOIA need not be released.