# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 12, 2022      Decided February 21, 2023

No. 21-5258

BRADLEY S. WATERMAN,
APPELLANT

v.

INTERNAL REVENUE SERVICE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-01823)

*David C. Vladeck* argued the cause and filed the briefs for appellant.

*Julie Ciamporcero Avetta*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief was *Jennifer M. Rubin*, Attorney.

Before: WALKER, *Circuit Judge*, and ROGERS and TATEL, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* ROGERS.

2

Opinion concurring in part and dissenting in part filed by *Circuit Judge* WALKER.

ROGERS, *Senior Circuit Judge*: The Secretary of the Treasury is empowered to "regulate the practice of representatives of persons before the Department of the Treasury." 31 U.S.C. § 330. Pursuant to this authority, the Office of Professional Responsibility ("OPR") investigates allegations of practitioner misconduct before the Internal Revenue Service ("IRS"). 31 C.F.R. § 10.1. Bradley Waterman sued the IRS under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of documents relating to the OPR's investigation of a misconduct report on him. The district court ruled that the four documents were protected from disclosure by FOIA Exemption 5's deliberative process privilege and granted summary judgment to the IRS. Waterman contends that the withheld documents are nondeliberative and therefore unprotected by Exemption 5. For the following reasons, we affirm in part and reverse in part.

**I**.

"The fundamental principle animating FOIA is public access to government documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999). FOIA requires federal agencies, "upon any request for records," to "make the records promptly available to any person." 5 U.S.C. § 552(a)(3). While the Act "reflects a general philosophy of full agency disclosure," *Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865, 869 (D.C. Cir. 2010) (internal quotation marks omitted), Congress also realized that "legitimate governmental and private interests could be harmed by release of certain types of information," *AquAlliance v. U.S. Bureau of Reclamation*, 856 F.3d 101, 102 (D.C. Cir. 2017) (quoting *Dep't of Just. v. Julian*, 486 U.S. 1, 8 (1988)). Consequently,

FOIA exempts nine categories of documents from "the government's otherwise broad duty of disclosure." *Id*. at 103.

Exemption 5 shields from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption incorporates the deliberative process privilege, which protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 150 (1975) (internal quotation marks omitted). To properly invoke Exemption 5, an agency must show that withheld documents are "both predecisional and deliberative." *U.S. Fish & Wildlife Serv. v. Sierra Club*, 141 S. Ct. 777, 788 (2021). A document is predecisional if it was "generated before the agency's final decision on the matter" and deliberative if it was "prepared to help the agency formulate its position." *Id.* at 786.

The "ultimate purpose" of the deliberative process privilege is "to prevent injury to the quality of agency decisions." *Sears*, 421 U.S. at 151. It reflects the view that if agencies were "to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." *Dudman Commc'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1567 (D.C. Cir. 1987) (internal quotation marks and citation omitted). The privilege also serves "to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

4

Waterman is a tax controversy attorney who regularly represents clients before the IRS. In 2012, Waterman's client approached the Tax Exempt Bonds office of the IRS to resolve its potential liability under Treasury regulations resulting from the use of a tax-accounting method known as "loan swapping." When no settlement was reached, the office began an audit of the bonds issued by Waterman's client. Internal Revenue Agent Michael Marchetti conducted the audit. Marchetti prepared a Suspected Practitioner Misconduct Report, which was filed with the OPR on March 17, 2014. The Report alleged that Waterman had unreasonably delayed the prompt disposition of the client's case before the IRS in violation of its rules of practice. Two memoranda — one authored by Marchetti and the other by his supervisor, Chelsea Kelly — were attached to the Report in support of Marchetti's allegations.

On September 10, 2014, Waterman was notified by the OPR that it had received allegations that his conduct had violated the IRS's rules of practice and that, upon review, the OPR had determined that the Report did not "warrant further investigation or action." Specifically, the letter stated that he was suspected of violating Subpart B of § 10.23 of the Regulations Governing Practice Before the IRS, which prohibits practitioner conduct that "unreasonably delay[s] the prompt disposition of any matter before the Internal Revenue Service." While the OPR had decided against taking further action, the letter noted that "the conduct alleged, if true, does constitute a technical violation of provision Circular 230 § 10.23," and so urged Waterman to "modify [his] future conduct accordingly." The letter also advised him that the OPR would retain the administrative file containing the allegations against him for 25 years and that those allegations could be considered as "cumulative conduct" in any future investigation.

Failing to obtain a copy of Marchetti's Misconduct Report in his correspondence with the OPR, on January 7, 2016, Waterman filed a FOIA request with the IRS seeking access to the Misconduct Report and "all documents prepared in connection or otherwise relating" to it. In response, the IRS conducted a search and located fifty-four pages of relevant material of which it released thirty-four pages. Invoking FOIA Exemptions 3 and 5, the IRS withheld four documents, twenty pages in full and two pages in part. The IRS denied Waterman's internal appeal concerning the four withheld documents.

After Waterman sued the IRS under FOIA to compel disclosure of the withheld documents, *Waterman v. IRS* (*Waterman I*), 288 F. Supp. 3d 206 (D.D.C. 2018), the IRS located more responsive documents and released portions of previously withheld documents. Four documents (sixteen pages) remain in dispute. On cross-motions for summary judgment, the IRS maintained, *inter alia*, that the withheld documents were properly exempt from disclosure under FOIA Exemption 5's deliberative process privilege, supported by affidavits by agency personnel and a *Vaughn* index, *see Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). As relevant, IRS attorney Elizabeth Rawlins's declaration sets forth the IRS's "rationale for partial and full withholdings," and augments the *Vaughn* index's description of the withheld documents. The district court granted summary judgment to the IRS, ruling that the withholdings were justified under Exemption 5. *Waterman I*, 288 F. Supp. 3d at 209.

Upon Waterman's appeal, this court remanded for the district court to enter a finding on whether portions of the withheld documents were "reasonably segregable." *Waterman v. IRS*, (*Waterman II*), 755 F. App'x 26, 27-28 (D.C. Cir. 2019). The parties agreed on remand to *in camera* review of the

documents. After reviewing the documents *in camera*, the district court again granted summary judgment for the IRS, finding that the IRS had released all reasonably segregable information and reaffirming that the documents had properly been withheld under Exemption 5. *Waterman v. IRS*, No. 16-1823, 2021 WL 4262722, at *3–5 (D.D.C. Sept. 20, 2021).

**II**.

This court's review of the district court's grant of summary judgment is *de novo*. *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021). To prevail on summary judgment, the IRS must demonstrate that it adequately searched for records responsive to Waterman's FOIA request and that the withheld documents are protected by Exemption 5 because they are predecisional and deliberative. *Id.* at 362. It can meet this burden "by submitting a *Vaughn* index, along with affidavits from agency employees that describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Am. Immigr. Laws. Ass'n v. Exec. Off. Immigr. Rev*., 830 F.3d 667, 673 (D.C. Cir. 2016) (citing *Vaughn*, 484 F.2d at 820) (internal quotation marks omitted).

Waterman contends that the withheld documents contain only factual information and are therefore nondeliberative records falling outside the scope of Exemption 5. Waterman does not dispute that the withheld documents were predecisional as to the OPR's determination that disciplinary proceedings were not warranted. Nor does he contest the adequacy of the IRS's search for responsive records. He also acknowledges that the FOIA Improvement Act of 2016 does not apply to his request, which was filed before the law took

effect. Pub. L. No. 114-185, 130 Stat. 538 (2016) (codified at 5 U.S.C. § 552(a)(8)(A)(i)).

"Purely factual material usually cannot be withheld under Exemption 5 unless it reflects an exercise of discretion and judgment calls." *Ancient Coin Collectors Guild v. U.S. Dep't of State,* 641 F.3d 504, 513 (D.C. Cir. 2011) (internal quotation marks omitted). The court has recognized that the fact-opinion line "must not be applied mechanically." *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). Rather, the legitimacy of withholding turns on "whether the selection or organization of facts is part of an agency's deliberative process." *Ancient Coin Collectors,* 641 F.3d at 513.

This court has consistently held that the deliberative process privilege protects documents reflecting agency officials' selection and organization of facts to help the agency formulate its position. In *Montrose Chemical Corp. of California v. Train*, 491 F.2d 63, 65 (D.C. Cir. 1974), the court affirmed the withholding of factual summaries of an administrative record prepared by aides for the Administrator of the Environmental Protection Agency to use in "his consideration of [a] case." In determining "what record evidence would be important to the Administrator in making his decision," the court reasoned "the assistants were making an evaluation of the relative significance of the facts recited in the record," which required them to "exercis[e] some kind of judgment," *id.* at 68, and, consequently, disclosure of the summaries would expose the agency's deliberative process, *id.* at 68, 70-71. Applying *Montrose*'s logic, the court has affirmed the withholding of "factual summaries . . . culled . . . from the much larger universe of facts presented to it," which "reflect[ed] an exercise of judgment as to what issues are most relevant," *Ancient Coin Collectors*, 641 F.3d at 513 (internal quotation marks omitted), an agency's draft account of

historical events, *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463-64 (D.C. Cir. 2014), and factual information contained in a legal opinion prepared by one agency for another, *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 12–13 (D.C. Cir. 2014).

Conversely, agencies are obligated to disclose purely factual records that do not reflect any judgment calls as to which facts to include. For example, in *Reporters Committee*, 3 F.4th at 365–66, agency comments "on the accuracy of purely factual statements in [a] draft report" were not deliberative because this "fact-checking exercise . . . did not call for judgment or the candid exchange of ideas." Likewise, a list of agencies that do not submit materials for clearance by the Office of Management and Budget was presented with "no commentary whatsoever" and was therefore not protected by Exemption 5. *Pub. Citizen*, 598 F.3d at 876. Nor was a report containing factual summaries "prepared only to inform the Attorney General of facts which he in turn would make available to members of Congress," rather than to facilitate his own decision-making. *Playboy Enters. v. Dep't of Just.*, 677 F.2d 931, 936 (D.C. Cir. 1982).

Here, the first group of documents withheld by the IRS comprises the "Marchetti Memo" and the "Kelly Memo." The former was authored by Internal Revenue Agent Marchetti, who audited the bonds issued by Waterman's client, and the latter by Kelly, Marchetti's supervisor. Both memoranda were attached to Marchetti's Suspected Practitioner Misconduct Report. While the IRS has already disclosed the Misconduct Report and a two-page Explanation of Suspected Misconduct, which summarizes the allegations in the Misconduct Report, it has withheld the memoranda in full under Exemption 5. *Vaughn* Index ¶¶ 15–16.

The IRS's system for "regulat[ing] the practice of representatives," 31 U.S.C. § 330, depends on Internal Revenue Agents, like Marchetti, to ferret out suspected misconduct and marshal "facts and reasons" to initiate an investigation by the OPR, 31 C.F.R. § 10.53; *see id*. § 10.1. The IRS avers that the Marchetti Memo sets forth "actions and statements" by Waterman in his "interactions with IRS personnel over a period of several months" that Marchetti "believed made the [OPR] referral appropriate." Rawlins Decl. ¶¶ 17(b), 19(b). *In camera* review has revealed two passages, appearing on pages 5 and 6 of the memorandum, that reflect Marchetti's evaluation of particular conduct he viewed as evincing Waterman's "intent to not cooperate with the disposition of the matter[]" and his failure to "negotiate[] with [the] IRS in good faith," J.A. 120-21, which is punctuated with references to the IRS's internal strategy in its audit of Waterman's client. As to those portions, Marchetti exercised his judgment to select and organize facts to support a discretionary agency decision by the OPR, much like the agency employees in *Montrose* and other cases in which this court has affirmed the nondisclosure of factual material under Exemption 5. *See, e.g., Montrose*, 491 F.2d at 68.; *Ancient Coin Collectors*, 641 F.3d at 513-14; *Mapother*, 3 F.3d at 1537–38. So too here.

But the remainder of the Marchetti Memo, which is a chronological collection of Waterman's statements over the course of the audit, falls outside the scope of Exemption 5. The IRS's affidavit provides no indication that Marchetti exercised his judgment to "separate[e] the pertinent from the impertinent," *Montrose*, 491 F.2d at 68, nor that he omitted a "known datum" in creating the chronology, *Mapother*, 3 F.3d at 1540. Exemption 5 does not protect such a "comprehensive collection of the essential facts." *Id*. Because it is "reasonably segregable" from Marchetti's evaluative commentary, 5 U.S.C.

§ 552(b), the chronological portion of the Marchetti Memo is subject to disclosure. *See Pub. Citizen*, 598 F.3d at 876; *Reps. Comm.*, 3 F.4th at 366; *Playboy Enters.*, 677 F.2d at 936-37. That is not because Marchetti's factual summary is organized chronologically, as our dissenting colleague assumes, Dis. Op. 6, but rather because the IRS's submissions fail even to indicate that any factual material pertaining to Marchetti's interactions with Waterman has been left out, much less identify "the chaff" from which "the wheat" supposedly has been separated, *Montrose*, 491 F.2d at 71; *Ancient Coin Collectors*, 641 F.3d at 513-14. "To justify summary judgment, a declaration must provide detailed and specific information demonstrating 'that material withheld is logically within the domain of the exemption claimed,'" and "conclusory," "vague," or "sweeping" assertions of privilege will not do. *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 30 (D.C. Cir. 1998) (quoting *King v. U.S. Dep't of Just.*, 830 F.2d 210, 217 (D.C. Cir. 1987); *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)).

The entirety of the Kelly Memo falls outside Exemption 5's protection. The IRS avers that the three-page memorandum of December 23, 2013, "summariz[es] a telephone conversation []Kelly held on that date" with Waterman and that "the memorandum sets forth part of the factual basis" that Kelly "believed made the referral appropriate." Rawlins Decl. ¶¶ 17(a), 19(a). This bare assertion provides no indication that Kelly selected particular facts from the telephone conversation in support of the misconduct referral. If the entirety of the telephone conversation supplied "part of the factual basis" for the misconduct referral, then there was no occasion for Kelly to "winnow down" factual material by "making an evaluation of the relative significance of the facts," *Montrose*, 491 F.2d at 68. Nor does recording statements made in a telephone conversation by itself "call for judgment." *Reps. Comm.*, 3

F.4th at 366. Our dissenting colleague surmises from the fact that Kelly "chose to include" the summary that must have involved a decision to include particular facts from the telephone conversation while excluding others. Dis. Op. 6-7. The IRS's affidavits present no basis for that inference, and *in camera* review has revealed no hint of Kelly's "evaluative commentary," *Pub. Citizen*, 598 F.3d at 876, or "editorial judgment," *Dudman*, 815 F.2d at 1568. "The judicial role" is not to fill the logical gaps in the agency's submissions but to "enforce that congressionally determined balance" embodied by FOIA's "handful of specified exemptions." *Milner v. Dep't of Navy*, 562 U.S. 562, 571 n.5 (2011). Because the IRS has failed to meet its burden to demonstrate that the memorandum logically falls within the scope of Exemption 5, the Kelly Memo must be disclosed.

The distinctions between the Kelly Memo and the protected portion of the Marchetti Memo come into sharper focus when considered in light of the court's decision in *Mapother*, where the question was whether Exemption 5 protected a report that informed the Attorney General's decision to bar the President of Austria from entering the United States due to his participation in Nazi war crimes. 3 F.3d at 1535. In preparing the Waldheim Report, Justice Department staff "compiled source materials . . . and composed [a] document" detailing Waldheim's wartime activities. *Id*. at 1536. The court concluded that the "great bulk" of the Waldheim Report was protected by the deliberative process privilege because the task required "[t]he staff . . . to cull the relevant documents, extract pertinent facts, organize them to suit a specific purpose, and to identify the significant issues they encountered along the way." *Id.* at 1535, 1538. By contrast, the court concluded that Exemption 5 did not protect a chronology that was "neither more nor less than a comprehensive collection of the essential facts of Mr.

Waldheim's military career." *Id.* at 1540. Like the portions of the *Mapother* Report covered by Exemption 5, the Marchetti Memo is shielded from disclosure insofar as it reflects its author's selection and organization of facts to aid the OPR's determination of the misconduct referral. The protected portion of the Marchetti Memo provides an evaluative commentary on Waterman's "statements and actions" over "a period of several months," while the Kelly Memo is essentially a same-day transcript of a single telephone conversation. *In camera* review has revealed "neither more nor less than a comprehensive" recounting of the telephone conversation, that reflects "no point of view," *id.*, placing the Kelly Memo beyond the scope of the deliberative process privilege.

The second group of withheld documents comprises the "Brown Memo" and a partially redacted printout from the OPR's electronic Case and Correspondence Management System ("CCMS"). Prepared by OPR analyst Kevin Brown and addressed to a section manager in the Legal Analysis Branch, the Brown Memo was written for the purpose of recording his analysis of the disciplinary referral. Rawlins Decl. ¶¶ 17(c), 19(c). The IRS withheld the Brown Memo in full under Exemption 5, along with a portion of a four-page printout from CCMS that tracks the progression of the OPR's administrative file in the Waterman matter. *Vaughn* Index ¶ 5; Rawlins Decl. ¶¶ 17(d), 20. The redacted portion displays a notation by Brown providing "a concise summary" of the "same information" contained in his memorandum. Rawlins Decl. ¶¶ 17(d), 20.

Both are shielded from disclosure by the deliberative process privilege. The IRS avers that the Brown Memo "summarize[s] the facts alleged, identif[ies] the violations alleged, and recommend[s] further predecisional agency actions." *Id.* ¶ 17(c). Its affidavits make sufficiently clear that

Brown "extract[ed] pertinent facts" surrounding the alleged misconduct by Waterman and, in view of the relevant disciplinary standard, "organize[d] them to suit a specific purpose": to make a recommendation on whether to further investigate Waterman or institute disciplinary proceedings. *Mapother*, 3 F.3d at 1538. Such an analysis involves an "exercise of judgment as to what issues are most relevant," *Ancient Coin Collectors*, 641 F.3d at 513, bringing the Brown Memo within the scope of Exemption 5. Because it is an abbreviated statement of Brown's analysis, the redacted portion of the CCMS printout is also protected by Exemption 5. Rawlins Decl. ¶ 20.

Finally, in March 2018, the IRS issued an email "Alert" through its newswire service that "highlight[ed]" a modification in the method by which the OPR notifies tax practitioners of misconduct allegations filed against them. Waterman's view that the Alert undermines the IRS's reliance on Exemption 5 is unpersuasive.

The Alert deals not with the IRS's FOIA disclosure obligations but with its ability to release certain third-party tax information pursuant to I.R.C. § 6103(l)(4)(A)(ii). There is no textual support for Waterman's contention that the Alert precludes the IRS from invoking Exemption 5 to withhold factual materials related to a disciplinary investigation by the OPR. Even when there is an ongoing disciplinary proceeding that triggers the statutory right of access under § 6103, "[d]iscovery shall not be authorized if . . . [t]he material sought is privileged or otherwise protected from disclosure by law." 31 C.F.R. § 10.71(d)(6). The revised notification procedure "highlight[ed]" by the Alert only augments a practitioner's ability to obtain *nonprivileged* material containing third-party return information.

Yet Waterman takes the view that the pro-disclosure thrust of the Alert demonstrates that withholding the contested documents does not serve any legitimate purpose of Exemption 5. Because the OPR would have notified him of the factual basis of the disciplinary proceedings had it chosen to pursue his case, Waterman maintains, the authors of the documents did not have an expectation of privacy to begin with and consequently the quality of future agency decision-making would not suffer were those documents disclosed. But this incorrectly assumes that disclosure of the particular documents underlying the initial disciplinary referral is the only means through which he could have been apprised of the factual basis of the disciplinary proceedings subsequently brought against him. Had the OPR initiated a disciplinary proceeding, it would have been required to provide Waterman with a "description of the facts . . . that constitute the basis for the proceeding," 31 C.F.R. §§ 10.60(c), 10.62(a), but it could have lawfully denied him access to documents covered by the deliberative process privilege, 31 C.F.R. § 10.71(d)(6).

Under these circumstances, withholding the contested documents, with the exception of the Kelly Memo and the unprotected portion of the Marchetti Memo, is consonant with Exemption 5's purposes. At least some of the recommendations in the contested documents were not adopted in the OPR's ultimate determination, so disclosure of the authors' potentially mistaken recommendations might have a chilling effect on their willingness to make such recommendations. *See, e.g.*, *Sears*, 421 U.S. at 150-51; *Dudman*, 815 F.2d at 1569. Insofar as the OPR's ultimate determination departs from the course of action proposed by at least some of the contested documents or from their reasoning, release of those predecisional documents might well mislead the public about the OPR's view of Waterman's conduct. *See, e.g.*, *Coastal States*, 617 F.2d at 866.

Accordingly, the court affirms in part the district court's grant of summary judgment to the IRS and reverses in part as to the Marchetti Memo and the Kelly Memo.

WALKER, *Circuit Judge*, concurring in part and dissenting in part:

An agency's sound decisionmaking depends on "the candid and frank exchange of ideas." *National Security Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir. 2014). But were agencies "to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." *Id.* (cleaned up). That's why the Freedom of Information Act's disclosure requirements do not extend to records that are pre-decisional and deliberative.

In this case, the district court respected FOIA's limits and thereby protected the executive branch's decisionmaking process.

I would affirm.

I

A client hired Bradley Waterman to represent it before the Internal Revenue Service. When the sides failed to reach a settlement regarding the client's tax liability, the IRS initiated an audit.

Unbeknownst to Waterman, the IRS auditors, Michael Marchetti and Chelsea Kelly, also filed a misconduct report against him with the IRS's Office of Professional Responsibility. They suspected that Waterman had "unreasonably delay[ed]" the case. 31 C.F.R. § 10.23. Eventually, the Office sent Waterman a letter explaining that it was not going to bring administrative charges against him. But the letter urged Waterman to behave better, and it warned that his conduct had been recorded in a file for use against him if any future allegations arise.

2

Wishing to know more, Waterman asked the IRS to disclose internal documents about his case. When the IRS refused to disclose everything, Waterman sued. He claimed that the Freedom of Information Act entitled him to the documents. 5 U.S.C. § 552.

The IRS later released more information, but it maintained that four documents could not be fully disclosed, including one memo by Marchetti and another by Kelly. The district court agreed with the IRS, holding that those documents fell within FOIA's exemption for records covered by the deliberative process privilege. *Id.* § 552(b)(5).

Today the court concludes that the IRS was entitled to withhold two of those documents. I concur with that part of its opinion.

But I respectfully disagree with the court's decision regarding the Marchetti and Kelly memos. FOIA allows the IRS to withhold them in their entirety.

II

FOIA requires the federal government to disclose many types of records upon request — but not records that are pre-decisional and deliberative. It expressly shields from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). FOIA thereby incorporates the "deliberative process privilege" that is available to the government in civil litigation. *United States Fish & Wildlife Service v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021).

Whether a pre-decisional record is deliberative turns on whether it was "prepared to help the agency formulate its position" and "reflects the give-and-take of the consultative process." *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021) (cleaned up). Generally, facts must be disclosed while opinions are protected. *Id.* at 365. But this distinction between facts and opinions cannot be applied "mechanically." *Mapother v. DOJ*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). That's because, for deliberative records, "the selection of the facts thought to be relevant clearly involves the formulation or exercise of policy-oriented judgment." *Id.* at 1539 (cleaned up).

Two key factors inform whether the government must disclose a pre-decisional factual summary.

First, we ask what purpose the factual summary served. This factor matters the most. A factual summary need not be disclosed if it was "prepared to aid an administrator in resolution of a difficult, complex question" — as in *Montrose Chemical Corp. v. Train*, 491 F.2d 63, 68 (D.C. Cir. 1974). But FOIA requires a factual summary's disclosure if it was meant "to investigate the facts" and to "inform" an agency's head about "facts which he in turn would make available to members of Congress" — as in *Playboy Enterprises, Inc. v. DOJ*, 677 F.2d 931, 935-36 (D.C. Cir. 1982) (cleaned up); *see also id.* at 936 (distinguishing *Montrose* because there the "summaries were prepared for the sole purpose of assisting the Administrator").

Second, we ask if the authors of the factual summary exercised judgment when deciding which facts to include. If yes, that cuts against disclosure. *See Ancient Coin Collectors Guild v. U.S. Department of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (the protected factual summaries came from a "much

larger universe of facts" and reflected a judgment about the "most relevant" facts); *Russell v. Department of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (choice of what to include in "histories" was deliberative)*; Montrose*, 491 F.2d at 68 (assistants exercised "their judgment as to what record evidence would be important to the Administrator").

For both factors, *Mapother v. DOJ* is instructive. 3 F.3d 1533 (D.C. Cir. 1993). At issue was a government report about a former Austrian president. *Id.* at 1535. Because the former president had been accused of war crimes, the report recommended that he be denied entry into the United States. *Id.*

This court concluded that most of the pre-decisional report was deliberative and thus protected against disclosure — including a significant amount of pure facts. *Id.* at 1537-40. *Mapother* reasoned that the protected facts had been "assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action." *Id.* at 1539. Thus *Mapother* relied on the two key factors described above: (1) an advisory purpose, and (2) the exercise of discretion regarding which facts to include.

At the same time, *Mapother* required the government to disclose a small part of the report — a comprehensive "chronology" of the former president's military service. *Id.* at 1540. The chronology differed from the rest of the report because it "in no way betray[ed] the occasion that gave rise to its compilation" and "reflect[ed] no point of view." *Id.* Unlike the rest of the report, "no known datum" had "been omitted" from it. *Id.* In other words, (1) it reflected no advisory purpose, and (2) its list of facts did not depend on choices made by its authors.

5

III

Marchetti and Kelly wrote their memos before the IRS decided whether to charge Waterman. The memos are deliberative because (1) their purpose was to help the IRS make that decision and (2) the selection of facts within them reveals how the agents exercised their judgment.

The first document is a nine-page memo written by Marchetti detailing the factual basis for his belief that Waterman violated IRS rules. By regulation, the IRS relies on agents like Marchetti explaining their "facts and reasons" to initiate misconduct investigations. 31 C.F.R. §§ 10.53(a), 10.1. Marchetti's memo about those "facts and reasons" formed the core of the referral and was sent as an attachment to the Office of Professional Responsibility. Its "sole purpose" was to explain the basis for his referral so the Office could "make a decision" on Waterman's alleged misconduct. *Playboy*, 677 F.2d at 936 (citing *Montrose*, 491 F.2d at 65).

Moreover, Marchetti's inclusion of specific actions and statements by Waterman over the course of months reflects his judgment as to which facts were "most relevant" to the referral. *Ancient Coin Collectors*, 641 F.3d at 513. That will almost inevitably be the case when months of frequent interactions between investigators and an attorney are summarized in a mere nine pages. To explain why he believed the Office should investigate Waterman, Marchetti had to choose certain facts over others, "separating the wheat from the chaff," which is "part of the deliberative process." *Montrose*, 491 F.2d at 71; *see also Mapother*, 3 F.3d at 1537-40. Indeed, tucked away in

the factual summaries are Marchetti's opinions about Waterman's actions and motives. *Montrose*, 491 F.2d at 68.[1]

True, the Marchetti memo lists facts chronologically. But that alone does not make the memo like the unprotected factual chronology in *Mapother*, 3 F.3d at 1537-40. Instead, the memo's chronological order was essential to Marchetti's purpose and "point of view," *id.* at 1540, regarding what "made the referral appropriate," JA 48. The sense of time underscored Marchetti's belief that for several months Waterman "unreasonably delay[ed]" the proceedings in violation of IRS rules. 31 C.F.R. § 10.23. So Marchetti's selection and organization of particular facts to support his referral decision are "inextricably intertwined" with his opinions. *Mead Data Central, Inc. v. United States Department of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). As a result, disclosing the facts would reveal the IRS's deliberative process. *Mapother*, 3 F.3d at 1537-40.

The second document, a three-page memo written by Kelly summarizing a phone call with Waterman, is a closer question. The "universe" of facts about the phone call is much smaller than the months of interactions "culled" for Marchetti's memo. *Ancient Coin Collectors*, 641 F.3d at 513. Perhaps there was little said on the call that was not summarized in the memo.

But like Marchetti's memo, Kelly's memo formed part of the basis for referring Waterman and was attached to the misconduct report to assist the Office in its determination. *Montrose*, 491 F.2d at 68. And Kelly's decision to summarize the phone call was itself an exercise in judgment regarding

---

[1] Today's court properly allows the IRS to redact those opinions from the memo.

which facts she considered "pertinent" to the referral. *Ancient Coin Collectors*, 641 F.3d at 513. After all, Kelly could have entirely omitted a summary of the call from her referral. But to persuade the Office to investigate Waterman, Kelly chose to include it. That decision involved "an exercise of judgment in extracting pertinent material . . . for the benefit of an official called upon to take discretionary action." *Mapother*, 3 F.3d at 1539.

To sum up, FOIA allows the IRS to withhold both memos because (1) their purpose was to assist in a discretionary decision (whether to further investigate Waterman) and (2) their authors selected facts that reflected a point of view (that Waterman should be investigated).

\* \* \*

It's easy to understand Waterman's desire for the memos he has requested. They include details of allegations against him by employees of an agency that wields considerable power over tax lawyers — and over the rest of us, for that matter. But FOIA does not require disclosure of the records Waterman wants to see. I therefore respectfully concur in part and dissent in part.